Arturo LAZCANO, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–91–00188–CR.

Court of Appeals of Texas,
El Paso.

June 24, 1992.

Discretionary Review Refused
Nov. 25, 1992.

**656**

Abe Hernandez, Charles H. Rennick, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for State.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

KOEHLER, Justice.

A jury convicted Arturo Lazcano, Appellant, of murder and subsequently assessed punishment at 98 years and one day imprisonment. In eight points of error, Appellant seeks review of the trial court's judgment. We reverse the judgment of the trial court and remand the cause for a new trial.

In Points of Error Nos. One and Two, Appellant argues that he was denied his constitutional right to a speedy trial. In Points of Error Nos. Three and Four, Appellant challenges the trial court's admission of an extraneous offense and his oral statements, respectively. In Points of Error Nos. Five, Six and Seven, Appellant argues the trial court erred in conditioning his cross-examination of a State's witness upon stipulating to the admission of otherwise inadmissible evidence. In his last point of error, Appellant asserts the trial court erred in denying his motion to remove uniformed officers from near Appellant during trial. Subsequent to overruling the first and second points of error, we will sustain Point of Error No. Three requiring that the cause be remanded to the trial court for a new trial.[1]

■ In Point of Error No. One, Appellant argues the trial court erred in denying his motions for a speedy trial and to dismiss which were filed on November 15, 1990 and heard on February 15, 1991. In Point of Error No. Two, Appellant complains that the trial court abused its discretion in granting the State's motion for a continuance on November 5, 1990, thereby denying Appellant his right to a speedy trial. Since Appellant's motions regarding his right to a speedy trial were not filed or heard until after the State's continuance was granted, we will address the points simultaneously.

■ A criminal action may be properly delayed by a motion for continuance by either party pursuant to Tex.Code Crim.

---

1. Due to its constitutional importance and since the issue will likely arise in the subsequent retrial, we will also address Points of Error Nos. Five, Six and Seven. However, we do not express any comment as to the merit, if any, to either Points of Error Nos. Four or Eight.

Pro.Ann. art. 29.03 (Vernon 1989). If longer than necessary, it is possible for a continuance to deny an accused the right to a speedy trial. *See Hart v. State,* 818 S.W.2d 430, 436 (Tex.App.—Corpus Christi 1991, no pet.). The United States Supreme Court established the criteria to consider when an Appellant alleges he was denied the constitutional right to a speedy trial, including: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972).

Looking at the length of delay, the record discloses that Appellant was arrested on February 19, 1990. It is from this date that Appellant's right to a speedy trial arose. *See Chapman v. Evans,* 744 S.W.2d 133, 136 (Tex.Crim.App.1988). The alleged offense occurred approximately one month prior to this arrest. The police interviewed Appellant twice during the week following the homicide and obtained physical evidence on those occasions. Trial was originally set for November 5, 1990, but upon the State's motion, the trial court granted a continuance to allow the State to obtain results from DNA testing—among others—until the first week of April 1991. Trial commenced on April 2, 1991. Accordingly, Appellant was tried within one year and two months from the point at which his right to a speedy trial arose. The delay in commencement of the trial must be of sufficient length to be presumptively prejudicial before a review of the remaining three factors is triggered. *See Russell v. State,* 598 S.W.2d 238, 248 (Tex.Crim.App.), *cert. denied,* 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980). *See also Chapman,* 744 S.W.2d at 136; *Hart,* 818 S.W.2d at 436.

We conclude that no such presumption is raised by the instant facts. The record before us indicates that trial of the case began approximately fourteen months after Appellant's arrest. The delay caused by the continuance consisted of approximately five of those months. Much of the evidence involved in the instant murder prosecution was circumstantial which required extensive testing at the Federal Bureau of Investigation laboratories. Considering the volume of evidence presented to the F.B.I. for such testing, it is doubtful whether the State could have obtained the results from those tests or secured the presence at trial of those persons conducting the tests anytime appreciably sooner. Thus, we find that the delay between Appellant's arrest and the time of trial was not of sufficient length to be presumptively prejudicial. *See generally, Russell,* 598 S.W.2d at 248 (with prosecution seeking death penalty, nine months was not presumptively prejudicial in capital murder prosecution); *Martinez v. State,* 824 S.W.2d 688, 691 (Tex.App.—El Paso 1992, pet. ref'd) (with accused absent from the state, two and one-half years was not presumptively prejudicial in indecency with a child prosecution). As a result, we need not consider the remaining factors, and Points of Error Nos. One and Two are overruled.

In Point of Error No. Three, Appellant argues the trial court erred in admitting evidence of an extraneous offense. In the face of a proper objection, evidence of other wrongful acts is not admissible to prove the character of the person to establish that he acted accordingly regarding the alleged offense. *Montgomery v. State,* 810 S.W.2d 372, 386 (Tex.Crim.App.1990, on own motion for rehearing). If, however, the proponent of the evidence convinces the trial court that it has relevance apart from its tendency to prove conforming character, evidence of the other crimes, wrongs or acts may, however, be admissible. *Montgomery,* 810 S.W.2d at 387. Evidence which logically serves such illustrative purposes as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" is relevant beyond its tendency to prove conforming character. Tex.R.Crim.Evid. 404(b). Pursuant to Tex.R.Crim.Evid. 403, such evidence is presumed admissible subject to exclusion only if the opponent of the evidence timely objects and demonstrates that the danger of unfair prejudice substantially outweighs its probative value. *Montgomery,* 810 S.W.2d at 389. *See also Long v.*

*State*, 823 S.W.2d 259, 271 (Tex.Crim.App. 1991), *pet. for cert. filed*, May 5, 1992 (No. 91–8174). If, however, the evidence has no relevance apart from conforming character, the evidence is absolutely inadmissible. *Montgomery*, 810 S.W.2d at 387; *Gilbert v. State*, 808 S.W.2d 467, 472 (Tex.Crim.App. 1991).

Appellant was charged with "intentionally and knowingly caus[ing] the death of an individual, VERONICA DIAZ GALVAN, by ligature strangulation, manner and means unknown. . . ." The evidence at trial indicated that the victim went to a nightclub with friends. During the time spent at the nightclub, witnesses saw the victim dance with Appellant. At closing time, the victim's friends were unable to locate her. The witnesses did not recall seeing Appellant at closing time either. However, neither of the witnesses saw the victim leave with Appellant. The victim's body was found the next day, and the crime scene contained evidence of sexual assault and molestation.

During the State's case-in-chief, an eighteen-year-old female testified she met Appellant at a private party approximately six weeks prior to the homicide as alleged. After talking with Appellant several times at the party, Appellant asked the witness, who was seventeen at the time, if she wanted to be alone with him to which she responded affirmatively. The witness accompanied Appellant across the street and into a tool shed to "make-out." During the interlude, Appellant allegedly became aggressive and forced the witness to the ground. Appellant failed to heed the witness's requests to stop his sexual advances, and she screamed, "rape," at which time Appellant covered her mouth. When the witness continued to scream, Appellant allegedly started to choke her with his hands about the neck. The witness testified she was able to coax Appellant into releasing her at which time the duo went different ways. The witness did not report the incident to the police, but during the homicide investigation, a friend of the witness notified the police who, in turn, contacted the witness regarding the incident. Although Appellant did not object to admission of the evidence regarding the probative value versus prejudicial effect aspect of *Montgomery*, he did object arguing that the evidence lacked relevance other than to prove conforming character. The State countered that the evidence was admissible to prove identity, intent, motive, common plan or scheme. After a lengthy discussion at the bench, the trial court overruled Appellant's objection; thus, the alleged error is preserved.[2]

Appellant maintains that the trial court clearly abused its discretion in the admission of the extraneous offense evidence arguing that neither of the exceptions was properly established. Upon appellate review, the trial court is given great leeway in its decision that the evidence served a legitimate purpose. *Montgomery*, 810 S.W.2d at 390. Since this determination is not exclusively one of rule and logic, we will not disturb the judgment of the trial court unless its ruling, based upon common observations and experiences, was outside the zone of reasonable disagreement. *Id.* at 391. *See also Kelly v. State*, 824 S.W.2d 568, 574 (Tex.Crim.App.1992). Concluding there is no reasonable perception of common experience from which the challenged evidence legitimately tended to make the existence of a consequential fact more or less probable, we find the trial court abused its discretion in admitting the evidence. *Montgomery*, 810 S.W.2d at 391.

■ Although the Rule 404(b) exceptions are merely illustrative and are not exhaustive, we will address only those purposes

**2.** We note that Appellant's point of error alleges error in that the evidence's prejudicial effect outweighed the probative value. While such alleged error was not preserved, Appellant's supporting argument clearly encompasses a challenge to the admissibility of the evidence regarding Rule 404(b) relevance. As required, we have liberally construed the whole of the point of error and find that it properly raises this latter challenge. Additionally, we note that the State has not complained that Appellant failed to preserve the alleged error in the admission of substantially prejudicial evidence. Thus, if needed, we are not precluded from making such a review. *Montgomery*, 810 S.W.2d at 395.

fostered by the State in obtaining admission of the testimony.[3] Regarding identity, the Court of Criminal Appeals has pronounced that the extraneous act must so nearly resemble the alleged offense as to be an earmark of the accused's handiwork. *Collazo v. State*, 623 S.W.2d 647, 648 (Tex. Crim.App.1981). The evidence should indicate such an unusual and distinctive method as to constitute a signature offense. Id. Since both the deceased and the extraneous offense witness were young females who were (1) choked; (2) and sexually assaulted; (3) in the El Paso area; (4) within a six week time frame; (5) allegedly by Appellant; (6) after they met him at social gatherings, the State argues the extraneous offense is sufficiently similar in its characteristics to warrant admission into evidence. To the contrary, we find these general "similarities" to be wholly innocuous as such features would tend to be common to many cases. It is not enough to say the offenses are sufficiently similar. Rather, the offenses must be distinctively similar. Nothing within the instant "similar" facts indicates an unusual and distinctive method of commission of an offense such that it can be considered an earmark of the perpetrator's handiwork.[4] While a single sufficiently distinguishing common characteristic may suffice to warrant admission of the extraneous offense evidence, we find no such idiosyncratic feature in the instant case. *See Lang v. State*, 698 S.W.2d 735, 737 (Tex.App.—El Paso 1985, no pet.).

In support of its position, the State relies upon our opinion in *Dowler v. State*, 777 S.W.2d 444 (Tex.App.—El Paso 1989, pet. ref'd). This reliance is misplaced because that holding is distinguishable due to facts in *Dowler* which clearly and unequivocally indicated a very distinctive method that the accused had committed several murders—chloroform and cyanide asphyxiation. This earmark of Dowler's handiwork showed his propensity to commit murder in the same peculiar manner; thus, the extraneous offenses were properly admitted. *Id.* at 448. The similarities clung to by the State in the instant case do not approach this level of uniqueness.[5] *See Lang*, 698 S.W.2d at 737. As a result, the evidence did not legitimately prove identity, and it was not admissible for that purpose.

As to intent, the culpable mental state the prosecution was required to prove pursuant to the indictment was intent to kill. Nothing contained in the extraneous offense witness's testimony indicates any intent to kill by Appellant. While the witness testified she feared for her life during the unreported assault, one can only speculate as to the perpetrator's intent. Since Appellant voluntarily released the witness from the choke hold, it is more probable than not that his intent was to prevent her from screaming rather than an intent to kill. Furthermore, it is not apparent from the record that Appellant challenged the "intent" element of the murder indictment. The murder indictment alleged Appellant killed the victim by ligature strangulation. Extraneous offense evidence is admissible as an exception to the general rule to prove scienter if the requisite guilty intent cannot be inferred from the act itself. *Morgan v. State*, 692 S.W.2d 877, 880–81 (Tex.Crim. App.1985); *Albrecht v. State*, 486 S.W.2d 97, 101 (Tex.Crim.App.1972); *Bryson v. State*, 820 S.W.2d 197, 199 (Tex.App.—Corpus Christi 1991, no pet.). The State introduced photographs of the victim illustrating the alleged ligature strangulation. Additionally, the medical examiner testified as

**3.** Even though not expressly addressed herein, we have also diligently considered the other purposes for which Rule 404(b) might allow admission of the challenged evidence. We, however, fail to find any purpose for which the challenged evidence was legitimately relevant.

**4.** Relying heavily upon *Collazo*, the Court of Criminal Appeals has recently reurged the necessity for unusual, distinctive or idiosyncratic similarities in order to establish that the extraneous evidence is sufficiently similar to estab-

lish a "system" or show "modus operandi" so that the testimony may be admitted as proving something other than conforming character. *See Owens v. State*, 827 S.W.2d 911 (Tex.Crim. App.1992).

**5.** Likewise, the similarities in the single extraneous offense in the instant case are not comparable to six chemically induced homicides committed in a short time in *Jones v. State*, 716 S.W.2d 142, 161–62 (Tex.App.—Austin 1986, pet. ref'd).

to the types of objects and the force required to cause the victim's death. From that evidence, the circumstances surrounding commission of the offense abundantly support a strong inference of Appellant's intent to kill without the need for support by way of extraneous offense evidence. *See generally, Prior v. State,* 647 S.W.2d 956, 958–59 (Tex.Crim.App.1983) (indecency with a child); *Jones v. State,* 481 S.W.2d 900, 902 (Tex.Crim.App.1972) (robbery). *See also, Garcia v. State,* 827 S.W.2d 27, 30–31 (Tex.App.—Corpus Christi 1992, no pet. h.). Since, in the instant case, the testimony did not contain any credible evidence regarding intent to kill and the intent could not be inferred from the act, the evidence was not admissible to properly prove intent.

■ Regarding extraneous offense evidence's admissibility as to motive, such evidence usually is required to relate or pertain to other acts by the accused against the victim of the crime for which the accused is presently being prosecuted. *See Foy v. State,* 593 S.W.2d 707, 708–09 (Tex. Crim.App.1980); *Rodriguez v. State,* 486 S.W.2d 355, 358 (Tex.Crim.App.1972); *Albrecht,* 486 S.W.2d at 100. It has, however, been previously held that extraneous offenses are admissible to illustrate an accused's ill will toward all persons within a certain class of people. *See Dillard v. State,* 477 S.W.2d 547, 551 (Tex.Crim.App. 1971). In *Dillard,* the Court found the evidence showed the accused's malice toward members of the Negro race, therein providing a motive for the sexually-based homicide. *Id.* In that such a holding is dangerously akin to proving conforming character and the mere propensity to commit a certain crime, we question its propriety under the present rules of evidence and the Court of Criminal Appeals' interpretation thereof in *Montgomery.*

Moreover, the evidence challenged in the instant case does not pertain to the same victim, nor does it tend to show Appellant's animosity toward a particular class of persons. The evidence merely tends to show Appellant's propensity to lure susceptible females away from the public's view in order that he might obtain some sexual gratification—not that Appellant harbored some ill will or other motive to murder either the deceased, the extraneous offense witness or females in general. Such an inference is precisely the type of character conformity evidence that Rule 404(b) does not allow. *See Gilbert,* 808 S.W.2d at 473. Furthermore, the Court of Criminal Appeals has, in *Boutwell v. State,* 719 S.W.2d 164, 176–79 (Tex.Crim.App.1985), specifically limited the use of third-party extraneous offenses to rare instances of which the instant case is not an example. Thus, even if the holding in *Dillard* retains some precedential value, it is inapplicable in the instant case. For the foregoing reasons, we find the evidence was not legitimately relevant as proof of motive, and it was not admissible for that purpose.

■ The last theory upon which the State hangs its hat to support admission of the extraneous offense is that the evidence proved a common plan or scheme. As noted by the Court of Criminal Appeals in *Boutwell,* trial courts have routinely employed this exception as a subterfuge to admit evidence which amounts to only propensity-type evidence. 719 S.W.2d at 180. In order to truly constitute a common plan or scheme, the proffered extraneous offenses must demonstrate the steps taken in furtherance of or in contemplation of accomplishing a scheme or plan. *Id.* at 181. The mere occurrence of numerous similar acts is insufficient to give rise to logical and legal relevance apart from showing a propensity to commit such acts. Even if the commission of a high number of generally similar offenses increases the potential relevance, the evidence tendered in the instant case illustrated only one analogous act. Without some indication that the acts constituted the necessary steps in the completion of a formed design, we expressly decline to hold that the occurrence of a single comparable act constitutes a common scheme or plan. *See Haley v. State,* 87 Tex.Crim. 519, 223 S.W. 202 (1920) *as cited in Boutwell,* 719 S.W.2d at 181.

The instant case is distinguishable from our holding in *Mares v. State,* 758 S.W.2d

932, 936–37 (Tex.App.—El Paso 1988, pet. ref'd). In *Mares,* we recognized the differences between component suboffenses "of a greater central, ultimate offense" and "virtually identical offenses [which] may be merely repeated, isolated instances of a criminal propensity." *Id.* at 937. In that case, it was apparent that the accused progressively exploited his authority and dominion as the teacher of elementary school female students to obtain some sexual gratification. *Id.* Each of the witnesses (the complainant and two extraneous offense witnesses) testified to a series of events in which the accused utilized his students' requests for tutorial assistance to become increasingly more intimate in his physical contact with the students. Thus, the extraneous offense evidence was admissible as proof of a common criminal scheme. *Id.*

Such progressiveness is simply not demonstrated by evidence of one other event which possesses characteristics which are merely similar in kind. Unfortunately, it is not at all uncommon for criminal males with such a depraved propensity to seek sexual gratification from unsuspecting females and, then, ultimately kill their prey by strangulation or other means. *See generally, Boyle v. State,* 820 S.W.2d 122, 145–46 (Tex.Crim.App.1989, on rehearing); *Little v. State,* 758 S.W.2d 551, 553 (Tex. Crim.App.1988); *Marquez v. State,* 725 S.W.2d 217, 220 (Tex.Crim.App.1987). (These are cases, among numerous other uncited cases, which we have found containing strikingly similar sex oriented homicides committed by strangulation.) Due to the deplorable prevalence of such similar acts, it cannot be said that evidence of an accused's commission of a single generally similar act, without more, constitutes a logically related central plan, scheme or motivation. Thus, the proffered extraneous offense evidence in the instant case lacked any legitimate relevance required to be admissible as a common plan or scheme.

From the foregoing discussion, we are confident, as a matter of law, "that by no reasonable perception of common experience [could] it be concluded that proffered evidence [had] a tendency to make the existence of a fact of consequence more or less probable than it would otherwise be...." *Montgomery,* 810 S.W.2d at 391. As a result, we conclude the challenged evidence was absolutely inadmissible pursuant to Rule 404(b), and the trial court abused its discretion in allowing its admission. Thus, we need not proceed to a Rule 403 "balancing test" analysis to determine whether the probative value of the evidence was substantially outweighed by its prejudicial effect. *See Montgomery,* 810 S.W.2d at 395. This determination alone does not, however, command that the case be reversed. As directed by the Court of Criminal Appeals' *Montgomery* decision, we must next conduct a harmless error analysis pursuant to Tex.R.App.P. 81(b)(2). *Montgomery,* 810 S.W.2d at 397.

Although rendered prior to *Montgomery,* the late Judge Duncan's opinion in *Harris v. State,* 790 S.W.2d 568 (Tex.Crim.App. 1989), squarely addresses the appropriate harmless error standard of review upon the finding of error in the admission of an extraneous offense. We are instructed to "focus upon the process and not the result" to determine whether the trial was essentially fair. *Id.* at 588. Having found error, we will reverse the judgment and remand the cause for a new trial unless we conclude beyond a reasonable doubt the error made no contribution to the conviction or punishment. Tex.R.App.P. 81(b)(2). If we are unable to make such a conclusion, the error necessarily interfered with the integrity of the process and is deemed harmful. *See Perez v. State,* 824 S.W.2d 565, 568 (Tex.Crim.App.1992); *Cook v. State,* 821 S.W.2d 600, 603–05 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1705, 118 L.Ed.2d 413 (1992). In ascertaining the extent to which the error disrupted the jury's orderly evaluation of the facts, we must examine (1) the source, nature and degree of the error; (2) its collateral implications; (3) how much weight a juror would probably place upon the erroneously admitted evidence; and (4) whether declaring the error to be harmless would foster repetition of the error by the State with impunity. *Harris,* 790 S.W.2d at 587; *Cruz v. State,* 827 S.W.2d 83, 86 (Tex.App.—Cor-

pus Christi 1992, no pet. h.); *Moore v. State,* 826 S.W.2d 775, 778 (Tex.App.— Houston [14th Dist.] 1992, no pet. h.); *Montgomery v. State,* 821 S.W.2d 314, 317, 324 (Tex.App.—Dallas 1991, pet. ref'd).

As previously noted, the erroneously admitted evidence centered around Appellant's luring of a teenage girl away from a party to "make-out" or "kiss" which allegedly resulted in an attempted sexual assault. The remainder of the State's evidence was entirely circumstantial, the most damning of which were the results of several scientific fiber analyses which placed the victim in Appellant's car and in contact with Appellant near the time of her death. Additionally, Appellant made several indirect, but inculpatory, statements to the police, and he also attempted to conceal a shirt that contained fibers matching some of those found at the scene. Several other pieces of scientifically analyzed evidence produced results which were inconclusive. Although the standard of review is not entirely based upon such a consideration, we note that the whole of the evidence could hardly be considered overwhelming.

The source and nature of the error surrounds the admission of evidence which pursuant to Tex.R.Crim.Evid. 404(b) was absolutely inadmissible. The degree of the error contemplates the emphasis placed upon the evidence by the State. In response to Appellant's attack upon the extraneous offense witness's credibility in his closing argument, the prosecutor rebutted stating that a short time prior to the homicide, Appellant:

> [I]s luring another girl out of her social drinking ... and gets her somehow out. She trusts him, and then he attacks here [sic]; and he chokes her. And, that shows—goes to show his intent, and his motive, and his identity, and his common scheme. Just fine. Goes to show that he was the person that did it. That says it. This charge, if you believe her you can consider it; intent, motive, design, scheme. That's what she was there for to show you that.

Consequently, it is plain the State relied heavily upon the extraneous offense testimony to establish Appellant's culpable intent to kill, his motive (*i.e., sexual gratification*), the killer's identity, and that he possessed a common scheme to seek sexual gratification and then choke his victims. The collateral implication is that the State characterized this evidence as the "clincher" by arguing, "Goes to show that he was the person that did it. That says it." The anticipated effect of the implication was clearly to put the State "over the top," and, thus, the level of emphasis on the evidence was high. Also, it is highly likely that the jury assigned significant weight to the improperly admitted testimony since the extraneous offense evidence was the only direct evidence of criminal activity submitted to the jury. *See generally, Moore,* 826 S.W.2d at 778 (accused's credibility and integrity substantially impugned by State's earnest reliance on erroneously admitted evidence).

Furthermore, the State also referred to the extraneous offense in opening summation of its penalty phase argument by stating that if the jury would "lock him up for as long as possible.... He is not going to be sexually assaulting and murdering any more girls." Consequently, the State, although believing the evidence to be properly admitted, used the testimony to argue that Appellant had committed more than one such act and should be prevented from similarly assaulting anyone else. Due to the inherent difficulties in making the fine line distinctions regarding admissibility of extraneous offenses, we do not feel compelled to say that the State is likely to repeat such an error with impunity. Because of the nature and extent of the error in relation to the remainder of the evidence presented at trial as outlined above, we are not, however, convinced beyond a reasonable doubt that the jury's orderly evaluation of the evidence was not disrupted and that admission of the evidence did not contribute to the conviction or the punishment assessed. Tex.R.App.P. 81(b)(2). *See also Moore,* 826 S.W.2d at 778. As a result, the integrity of the required process of a fair trial was breached, and the error was not harmless. Point of Error No. Three is sustained.

■ Briefly, we will address the propriety of requiring Appellant to stipulate to the admission of otherwise inadmissible evidence in order that he might be entitled to cross-examine a State's witness as raised by Points of Error Nos. Five, Six and Seven. During the investigation, an El Paso County detective collected casts of shoe and tire prints found at the scene, seized Appellant's shoes, and obtained blood, hair and soil samples for analyses to be conducted by the F.B.I. The test returned only inconclusive results. Consequently, the federal agent who conducted the tests declined to testify due to other pressing matters in which test results were conclusive. The trial court granted the State's motion in limine regarding those matters. In response to Appellant's desire to cross-examine the detective about his collection of the evidence, the court agreed to allow the cross-examination only upon Appellant's stipulation to admit the reports of the inconclusive test results. As a result, Appellant argues his right to cross-examine the detective was impermissibly restricted, the burden of proof was shifted and that he was denied the right to cross-examine the maker of the reports of the inconclusive test results. Due to the constitutional nature of the issue and the likelihood of reoccurrence, we will address the issue.

As the trial court noted, the situation giving rise to this problem is unfortunate and unusual. However, the court felt that Appellant's cross-examination of the detective about his efforts to collect the evidence would mislead the jury if the reports of the test results could not be introduced into record. The reports could not be qualified as an exception to the hearsay rules without the presence of the agent who ran the tests or his supervisor. Since he was "unavailable," the trial court required Appellant to stipulate to the reports' admission into evidence. In short, we agree with Appellant's argument at trial that although fault could not be assessed to either party for the inadmissibility of the reports, it was his liberty which was at stake. When considered together with the fundamental right to confront one's accusers, we conclude that the balance tips in favor of the rights of the accused which should receive preferential treatment.

■ The dominant concern of the confrontation clause is the right of an accused to an opportunity to cross-examine his accusers. *Long v. State*, 742 S.W.2d 302, 312 (Tex.Crim.App.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988) (citing numerous United States Supreme Court opinions), *ovrr'd on other grounds*, 789 S.W.2d 918, 922–25 (Tex.Crim.App. 1990). This right is to be suspended only on the basis of a compelling state interest which substantially outweighs the protections intended to be fostered by the constitutional right. *Id.* at 316–17. Nothing in the record indicates whether or not Appellant previously had the opportunity to cross-examine the detective. Thus, he was entitled to do so at trial regarding the collection of the specified items of evidence. The trial court's requirement that the reports be admitted by stipulation prior to such an examination of the detective placed Appellant in a no win situation. To make such a stipulation also precluded Appellant from having an opportunity to cross-examine the federal agent who conducted the tests and compiled the inconclusive results. The record does not clearly indicate the concerns of the trial court other than that the jury would be "mislead." While the trial court is entitled to closely examine these competing interests to maintain the integrity of the fact-finding process, the instant record fails to demonstrate a sufficiently compelling state interest that would substantially outweigh Appellant's constitutional right to have an opportunity to cross-examine his accusers. *Long*, 742 S.W.2d at 316–17. Therefore, we conclude it was error to require Appellant to stipulate to the introduction of the reports.

Error in denial of an accused's right to an opportunity to cross-examine requires a subsequent harmless error analysis. *Mallory v. State*, 752 S.W.2d 566, 568–69 (Tex. Crim.App.1988). *See also Lewis v. State*, 815 S.W.2d 560, 565–66 (Tex.Crim.App. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992). Due to our resolution of the third point of error, it is

not necessary that we conduct an in-depth analysis, but we will express some relevant points of interest. As previously stated, the Court of Criminal Appeals' harmless error analysis includes several factors to be considered.[6] *Harris*, 790 S.W.2d at 587. The source and nature of the error was due only to a matter of practicality in an inability to secure the presence of the federal agent. However, the degree of the error is one of constitutional dimension. As noted by Appellant's sixth point of error, a collateral implication of the error was to shift the burden of proof. Our concern, however, is that the State should be aware of our disapproval of this practice in most cases. Moreover, the denial of an accused's right to an opportunity to cross-examine should be avoided unless extreme circumstances that can be documented in the record establish a compelling state interest that substantially outweighs the protections that the right seeks to further. Otherwise, the State might be tempted to repeat the error. *Harris*, 790 S.W.2d at 587.

Having sustained Point of Error No. Three, we reverse the judgment of conviction and remand the cause to the trial court for a new trial.

---

**6.** We would normally examine (1) the source, nature and degree of the error; (2) its collateral implications; (3) how much weight would probably be placed upon the evidence by a juror; and (4) whether declaring the error to be harmless would foster repetition of the error by the State with impunity.