Plyant v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-028-CR

     RONALD PLYANT,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 361st District Court
Brazos County, Texas
Trial Court # 22,291-361
                                                                                                    

O P I N I O N
                                                                                                    

      A jury tried and convicted Ronald Plyant on one count of attempted sexual assault. The trial
court, over Plyant's objection, permitted testimony of an extraneous offense of aggravated sexual
assault. Plyant argues on appeal that the trial court erred in allowing this testimony because the
testimony failed to meet any of the exceptions to the general rule that extraneous offenses are
inadmissible and because the prejudicial effect of this testimony substantially outweighed any
probative value it may have had. We affirm.
      On May 6, 1993, Plyant attempted to assault sexually a 19 or 20 year old Texas A&M student
in front of her College Station apartment. At approximately 2:00 in the morning, the complainant
was returning home after an evening of studying for final exams. As she approached the parking
lot to her apartment complex, she noticed a white male exiting an automobile and walking towards
her apartment. The complainant, leery of being alone with an unknown man at an early morning
hour, waited in her car a few moments for the man to leave before getting out of her car. When
the complainant could no longer see him, she decided he must have entered one of the several
apartments in her complex and started to walk towards her second-floor apartment. As she
approached the stairs, the white male, Plyant, stepped in front of her, blocking the her path, and
asked if she knew the location of a party. The complainant responded that she was unaware of any
party and that she wanted to ascend the stairs. Plyant then moved in front of her and grabbed her
arm. He told her that he did not want to hurt her, that he just wanted to know if she knew the
location of a party. The complainant repeated that she did not know and that she wanted to ascend
the stairs.
      Plyant then began to grab at the complainant's arms and chest. He also reached behind her
and between her legs. She responded by screaming and by scratching and hitting Plyant's face and
neck. After a couple of minutes, Plyant ceased his assault, told the complainant, "Well, I guess
you don't want to party," and stumbled back towards his car. 
I.   ADMISSIBILITY OF EXTRANEOUS OFFENSE 

      Plyant's first point asserts the trial court erred in admitting evidence of an extraneous offense,
namely, aggravated sexual assault.
      Under the theory that a defendant is entitled to be tried only on the accusation for which he
is charged, not on some collateral crime or for being a criminal generally, evidence of extraneous
offenses is generally not admissible in a criminal trial. Tex. R. Crim. Evid. 404(b); see Cantrell
v. State, 731 S.W.2d 84, 88 (Tex. Crim. App. 1987); Wiggins v. State, 778 S.W.2d 877, 881
(Tex. App.—Dallas 1989, pet ref'd). However, evidence of an extraneous offense may be
admitted for several limited purposes, such as the proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident, when such evidence is
necessary to prove an element of the crime for which the defendant is accused. Tex. R. Crim.
Evid. 404(b); Montgomery v. State, 810 S.W.2d 372, 386-387 (Tex. Crim. App. 1991) (on
rehearing).
      Plyant was charged with attempted sexual assault. Attempted sexual assault is a specific-intent
crime, meaning the prosecution bears the burden at trial to prove beyond a reasonable doubt to the
trier of fact that the defendant, among other things, possessed the specific intent to assault his
victim sexually. Tex. Penal Code Ann. §§ 15.01(a), 22.011 (Vernon 1994). Accordingly, the
state, at trial, attempted to enter into evidence testimony from a witness that Plyant raped her ten
days after his attempted sexual assault of the complainant in the instant case. 
      Plyant argues the court should not have admitted evidence of any extraneous offenses because
he never disputed the state's assertion that he possessed the specific intent to assault the
complainant sexually. See Lazcano v. State, 836 S.W.2d 654, 659 (Tex. App.—El Paso 1992,
pet. ref'd) (when specific intent can be inferred directly from the evidence adduced at trial, the
prosecution will not be allowed under Rule 404(b) to admit evidence of extraneous offenses);
Morgan v. State, 692 S.W.2d 877, 880-881 (Tex. Crim. App. 1985) (same under common law
prior to adoption of Texas Rules of Criminal Evidence). While Plyant may be correct in this
assertion, the state will nevertheless be allowed to enter extraneous offense evidence when the
defendant contends that he lacked the specific intent to commit the crime. See Creekmore v. State,
860 S.W.2d 880, 892 (Tex. App.—San Antonio 1993, pet. ref'd) (on rehearing) (evidence of
extraneous offenses is admissible to rebut a defensive theory).
      Plyant's cross-examination of complainant and another of the state's witnesses, Detective
Donnie Andreski of the College Station Police Department, indicates that he raised the defensive
theory that he lacked the specific intent to assault the complainant sexually.
      After the state had completed its direct examination of the complainant but before the state
attempted to enter evidence of Plyant's extraneous offense, the following cross-examination by
defense counsel occurred:
[Defense counsel]: Would it be fair to say that ... mostly college students ... lived in [your
apartment complex]?
 
[Complainant]: Well, in my particular [building of four apartments within the complex], we
were all college students. I had seen kids and parents at some of the other buildings, but I
didn't know them.
 
[Defense counsel]: Do you know of anybody that lived in the entire complex [who] wasn't a
college student?
 
[Complainant]: I just said I've seen parents and kids and different ages of people in the whole
complex. I mean, there is a lot of apartment buildings, but I didn't personally know any of
them. I knew college students in there.
 
[Defense counsel]: Is it unusual for the college students in that apartment complex to have
parties?
 
[Complainant]: During finals at 2:15 in the morning, it's unusual, especially in my area. [I]n
the four-plex [in which my roommates and I lived] and the four-plex next to us, I've never
seen a party there.
 
[Defense counsel]: Never know anyone to have parties in your complex there?
 
[Complainant]: I'm sure somewhere in [my apartment] complex -- it spans three streets -- they
had parties, but in my four-plex building and the four-plex next to me, I never knew of a
party.

After then asking complainant some questions on the configuration of her apartment complex,
defense counsel continued his cross-examination:
[Defense counsel]: And you saw the man get out of his car and go up to your building, and
you assumed that he went into another apartment and that is when you got out and walked up?
 
[Complainant]: Yes.
 
[Defense counsel]: And when you walked up and he came up towards you and you all met
there at the foot of the stairs and he was asking you if you knew where the party was; is that
right?
 
[Complainant]: He was blocking the stairs.
 
[Defense counsel]: Okay. And that's when he asked you if you knew where the party was?
 
[Complainant]: Right.
 
[Defense counsel]: And you said that you didn't say anything[;] you just started to go up the
stairs?
 
[Complainant]: I didn't actually have a foot on the stairs. I tried to, but he was blocking.
 
[Defense counsel]: Without saying anything?
 
[Complainant]: Yes.
 
[Defense counsel]: And that's when you said that the man grabbed [a hold] of your arm and
asked you again, ["]Do you know where the party is?["]
 
[Complainant]: Yes.
 
[Defense counsel]: And that's when you became scared and started scratching?
 
[Complainant]: No. [I] started scratching and hitting ... when ... I realized he was not going
to let me go up the stairs and that he was after me, not looking for a building to go into.
 
[Defense counsel]: Okay. Well, what led you to believe or when did you come to the belief
that he was after you?
 
[Complainant]: Well, because anyone who really wanted to find a party, once they realized
that I didn't know where one was, wouldn't keep badgering me until I made one up
somewhere. And so he kept coming at me and grabbing at me.

...
 
[Defense counsel]: ... What was the next thing that happened?
 
[Complainant]: That is when I said, ["]I don't know where the party is. I'm just going up the
stairs.["] And he said, ["]Listen I just heard there was a party here, and I want to know
where it is.["] I said, ["]I don't know.["] He [then] grabbed both of my arms and -- I mean,
it wasn't like he just kind of grabbed me. It was harsh. So I started backing away, and then
he started coming more at me.

After complainant had completed her testimony, the state called Detective Andreski. The
following cross-examination of Detective Andreski occurred before the state attempted to offer any
evidence of Plyant's extraneous offense:
[Defense counsel]: When this investigation started, after you had the information from the
people that went out there, [Plyant] was being investigated for just misdemeanor assault; is
that correct?
...
 
[Detective Andreski]: When I read the [first investigatory] report [completed in this case by
Officer Brad Harris], he was being investigated for criminal attempt and sexual assault. 
...
[Defense counsel]: Well, when [Officer] Harris decided to charge misdemeanor assault, he
had talked to complainant in person, hadn't he?
 
[Detective Andreski]: Yes, he had.

      Plyant's cross-examination of the complainant and Detective Andreski clearly indicates that
he was attempting to demonstrate that, if he did assault the complainant, the assault was in no way
sexual. See Chavez v. State, 794 S.W.2d 910, 913 (Tex. App.—Houston [1st Dist.] 1990, pet.
ref'd) (defensive theory can be raised through defendant's cross-examination of the state's
witnesses). Plyant's questioning of complainant was, at least in part, an attempt to demonstrate
that, if he assaulted the complainant, he did so because he was angered by her responses to his
ostensibly sincere inquiries into the location of a party. He then tried to shore up this line of
questioning by eliciting from Detective Andreski testimony that Officer Harris originally had
decided only to charge Plyant with simple, not sexual, assault.
      An appellate court's review of a trial court's decision on the admissibility of extraneous
offense evidence is subject to an abuse of discretion standard of review. Montgomery, 810 S.W.2d
at 390-392. We conclude the trial court was within its discretion in implicitly finding that Plyant's
cross-examination of the complainant and Detective Andreski raised the defensive theory that he
lacked the specific intent to assault the complainant sexually. Therefore, the trial court did not
err in finding that the extraneous offense could be admitted to rebut a defensive theory under Rule
404(b). Plyant's first point of error is overruled.
II.  PREJUDICIAL EFFECT

      Plyant asserts in his second point that the court erred in admitting evidence of the extraneous
offense because the probative value of this evidence was outweighed by its prejudicial effect. We
disagree.
      "Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or
by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R.
Crim. Evid. 403. A trial court's finding that the probative value of disputed evidence is not
substantially outweighed by its prejudicial effect will not be reversed on appeal absent an abuse
of discretion by the trial court. Montgomery, 810 S.W.2d at 390-392; Prieto v. State, 879 S.W.2d
295, 298 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd).
      The Court of Criminal Appeals has identified four criteria to be used in determining whether
the probative value of evidence is outweighed by its prejudicial effect:
(1) whether the ultimate issue was not seriously contested by the opponent;
 
(2) whether the state had other convincing evidence to establish the ultimate issue to which
the extraneous misconduct was relevant;
 
(3) whether the probative value of the misconduct was not, either alone or in combination with
other evidence, particularly compelling; and
 
(4) whether the misconduct was of such a nature that a jury instruction to disregard it for any
but its proffered purpose would not likely have been efficacious.

Montgomery, 810 S.W.2d at 392-393.
      The following testimony was offered into evidence by a female witness for the state:
[Prosecution]: [T]ell the jury how old you are.
 
[Witness]: I am 19.
...
 
[Prosecution]: Back in May of this year, did you live in this community?
 
[Witness]: Yes, I did.
 
[Prosecution]: And where did you live?
...
 
[Witness]: [I]n an apartment complex on 29th and Broodmoor [in Bryan].
...
 
[Prosecution]: I want to turn your attention to the ... early morning hours of May 17th, and
ask you if anything significant occurred on that particular night?
 
[Witness]: Yes, it did.
 
[Prosecution]: And what was that?
 
[Witness]: I was raped.
...
 
[Prosecution]: And where did you come in contact with the individual that raped you?
 
[Witness]: [The] front door ... [o]f my apartment.
 
[Prosecution]: How did that occur? I mean, were you in the apartment or what happened?
 
[Witness]: No. I was walking from my car to my front door.
 
[Prosecution]: And what happened?
 
[Witness]: ... I was approached and grabbed from behind.
...
[Prosecution]: Then what happened?
 
[Witness]: He took me to the side of the apartment complex to the grass and raped me.
 
[Prosection]: And did he take you by force?
 
[Witness]: Yes, he did.
...
 
[Prosecution]: [T]ell the jury the manner in which you ended up around the side of the
building.
 
[Witness]: Very forcefully.
 
[Prosecution]: ... And once you got on the other side of the building..., what happened?
 
[Witness]: He took off my shorts, put my belt around my neck, ripped off my panties, and
made me lay down on the ground on my stomach.
 
[Prosecution]: And after you were laying on the ground, what happened?
 
[Witness]: He raped me.
 
[Prosecution]: Did he penetrate?
 
[Witness]: He penetrated me, yes.
 
[Prosecution]: With what?
 
[Witness]: His penis and his finger.
...
 
[Prosecution]: [D]o you see the person in the courtroom today who did this to you back on
May 17th, 1993?
 
[Witness]: Yes, I do.
 
[Prosecution]: And you can point him out for us?
 
[Witness]: He is right there (indicating [Plyant]).

      The first criterion to be considered in weighing the probativeness of proffered testimony
against its prejudicial effect is whether the ultimate issue for which the extraneous offense was
offered was seriously contested by Plyant. Evidence of the extraneous offense was allowed by the
court to demonstrate that Plyant possessed the specific intent to assault complainant sexually. As
described above, Plyant's counsel in some detail contested through his cross-examination of two
of the prosecution's witnesses the state's assertion that Plyant specifically intended to assault
complainant sexually. Accordingly, the court could reasonably have found that Plyant did
seriously contest the issue of specific intent at trial.
      The second criterion asks whether the state had other convincing evidence on the issue for
which the extraneous offense was admitted. The only other evidence the state offered to establish
Plyant's specific intent was the complainant's testimony that Plyant blocked her from the stairway
to her apartment, asked her repeatedly about the location of a "party," grabbed at her chest and
arms, and reached around behind her to grab between her legs. This evidence, while probative
of Plyant's specific intent to assault complainant sexually, was not compelling, especially in light
of defense counsel's attempts to disprove his specific intent. Without other compelling evidence
to demonstrate Plyant's specific intent, the state was left with the need to introduce other evidence
to prove Plyant's specific intent beyond a reasonable doubt. The court could reasonably have
found that the state needed to offer evidence of the extraneous offense to prove Plyant's specific
intent beyond a reasonable doubt.
      The third factor addresses the probative value of the evidence. Plyant's extraneous offense
was extremely probative of his specific intent to assault complainant sexually. Plyant was charged
with attempted sexual assault. The state needed to prove beyond a reasonable doubt that Plyant
possessed the specific intent to assault complainant sexually in order to obtain a conviction. 
Without any evidence that Plyant completed his attempted sexual assault of complainant, the state
needed evidence from some other source to demonstrate that Plyant intended to assault
complainant sexually. Testimony from a witness that Plyant raped her ten days after the incident
in the instant case under very similar circumstances provided highly probative evidence of Plyant's
specific intent. See Morgan, 692 S.W.2d at 881 (before an extraneous offense is admissible, such
offense must be sufficiently similar in nature to the charged offense); but see Wiggins, 778 S.W.2d
at 886 (an extremely high degree of similarity is not required where intent is the material issue
when admitting evidence of an extraneous offense).
      We note the court could reasonably have found a great similarity between the offense charged
in the instant case and the evidence of the extraneous offense testified to by the state's witness:
Both victims were 18, 19, or 20 years old; both incidents happened within a few miles of each
other; both incidents occurred in the early morning hours; both victims lived in apartments near
Texas A&M University; and the assailant in both incidents approached his victims as they were
walking from their cars to their apartments. Given the stark similarities between the two incidents
and the inherent sexual nature of the extraneous offense, the court could have reasonably found
the extraneous offense was highly probative of Plyant's intent to assault the complainant sexually.
      The fourth factor involves whether the misconduct was of such a nature that a jury instruction
to disregard it for any but its proffered purpose would not likely have been efficacious. The court
instructed the jury "only [to] consider the [extraneous offense] in determining the intent of the
defendant, if any, in connection with the offense, if any, alleged against him in the indictment in
this case and for no other purpose." The admission of the extraneous offense against Plyant was
undoubtedly prejudicial toward him. However, the court's instructions to the jury to consider such
evidence only for the purpose of ascertaining his specific intent to assault complainant sexually
greatly limited any prejudicial effect.
      Considering these four factors together, we conclude the trial court did not abuse its discretion
in finding that the prejudicial effect of admitting Plyant's extraneous offense into evidence was not
substantially outweighed by its prejudicial effect. Accordingly, we overrule Plyant's second point
of error.
III. CONCLUSION
      Because we overrule Plyant's two points of error, we affirm the judgment of the trial.
 
                                                                               BOBBY L. CUMMINGS
                                                                               Justice

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed November 9, 1994
Do not publish