# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00606-CR

**Anthony Perez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
## NO. D-1-DC-07-904041, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Anthony Perez of the offense of burglary of a habitation, *see* Tex. Penal Code Ann. § 30.02 (West 2003), and he was ultimately sentenced to twenty-five years in prison. Perez challenges the factual sufficiency of the evidence to support his conviction, the admission of certain evidence, and the State's failure to disclose certain evidence. We affirm the judgment of conviction.

On July 13, 2006, Cheryl Johnston, who was house-sitting for her neighbors, the Schilhabs, approached the Schilhab residence on Gun Metal Drive and found the front door unlocked. Upon further investigation, she observed that the back door had been kicked in. Following this discovery, Johnston called the police. Officer David Easley responded to the call and dusted for fingerprints on a light switch near the point of entry and on two empty metal watch boxes in the master bedroom. Two of these fingerprints were matched to those of Perez.

At trial, Cheryl Johnston's son, 14-year old Chase Johnston, testified that, earlier that day, a man wearing blue scrubs and a hat, and purportedly looking for a doctor, had knocked on the Johnstons' door. In addition, Cheryl testified that Chase had called her to tell her about this encounter on the day it occurred. According to Cheryl, Chase told her that a man wearing medical scrubs and a hat, and holding money in his hand, had come to their door looking for a doctor. Later, Chase gave detectives a general description of the man. Then, on two separate occasions, Chase was presented with a photo array, in which Perez's photo was included. When presented with the first array, Chase identified a person other than Perez. When presented with the second array about a week later, however, an array that included the more recent booking photo of Perez, Chase identified Perez as the man he had seen. For identification purposes only, the district court admitted evidence connecting Perez with another burglary that occurred later the same day on Edwards Hollow Run, and in which the perpetrator engaged in similar conduct.

On July 28, 2006, Perez was pulled over for a traffic violation and arrested based on two outstanding warrants for driving while intoxicated and burglary. He was wearing blue medical scrubs. His vehicle was searched and two items of property from the Edwards Hollow Run burglary were recovered. After the arrest, police executed a search warrant for Perez's residence and recovered a watch taken from the Edwards Hollow Run residence as well as two pairs of blue medical scrubs.

On August 18, 2006, Perez was indicted on one count of burglary of a habitation with intent to commit theft. The indictment included two enhancement paragraphs for theft and cocaine possession. On May 2, 2007, following a dismissal of the original indictment, Perez was re-indicted

on the same charge. Included in the re-indictment were the original enhancement paragraphs along with additional enhancement paragraphs for passing a worthless check and for burglary in Louisiana.

In six points of error, Perez challenges the factual sufficiency of the evidence to support his conviction and the admission of certain evidence. In addition, Perez argues that the State withheld material favorable evidence during a suppression hearing. He also argues that the search of his vehicle pursuant to his arrest was illegal, and therefore, the district court should have granted his motion to suppress any evidence obtained in the search. As the propriety of the trial court's admission and suppression of certain evidence bears on the evidence to be considered in our sufficiency review, we first consider these challenges.

In his second point of error, Perez argues that the district court erred in admitting evidence of the Edwards Hollow Run burglary because it was not sufficiently similar to the charged offense to amount to a signature offense. The State sought admission of the Edwards Hollow Run burglary under Texas Rule of Evidence 404(b), arguing that the two crimes had a unique signature. *See* Tex. R. Evid. 404(b). According to the State, the extraneous offense was, therefore, admissible to show identity of the accused. *See id.*

We review the trial court's decision to admit evidence of extraneous acts for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1991) (op. on reh'g). A trial court's ruling should only be reversed as an abuse of discretion when the decision lies outside the zone of reasonable disagreement. *Robbins v. State*, 88 S.W.3d 256, 260 (Tex. Crim. App. 2002). Trial courts have broad discretion in their evidentiary rulings because "trial courts are usually in

3

the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Evidence of an extraneous offense is admissible to prove identity, when identity is an issue, only if there is some distinguishing characteristic common to both the extraneous offense and the offense for which the accused is on trial. *Ransom v. State*, 503 S.W.2d 810, 812 (Tex. Crim. App. 1974). The common distinguishing characteristic may be the proximity in time and place or the common mode of the commission of the offenses. *Id.* (citing *Ford v. State*, 484 S.W.2d 727, 729 (Tex. Crim. App. 1972)); *see also Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996). To be admissible for the purpose of showing identity, the acts sought to be admitted must be "so similar to the offense charged that the accused's acts are marked as his handiwork, that is, his 'signature' must be apparent from a comparison of circumstances in both cases." *Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993).

Perez relies on *Avila v. State*, 18 S.W.3d 736 (Tex. App.—San Antonio 2000, no pet.), and *Lazcano v. State*, 836 S.W.2d 654 (Tex. App.—El Paso 1992, pet. ref'd), to support his contention that the Edwards Hollow Run offense is not sufficiently similar to the offense at issue to be deemed a signature offense. In *Avila*, a sexual assault case, the accused appealed the admission of the testimony of a second rape victim. 18 S.W.3d at 740. Identity was at issue in *Avila* because the victim never saw who raped her. *Id.* According to the State, the extraneous offense was admissible to prove identity because both crimes "occurred in the dark, at night" while "the victim was asleep; both occurred here in the city limits of Crystal City; [and in] both instances the perpetrator entered the room without the consent of the victim. In both instances the perpetrator

4

turned the victims over. In both instances the sexual act was essentially in the same type of position." *Id.* (internal quotation marks omitted). In reversing the trial court's admission of the evidence, the court of appeals explained that, although the two offenses shared some similarities, there was nothing about the similarities that would "mark both offenses as the handiwork of the accused." *Id.* at 741. Rather, the similarities were "more in the nature of the similarities common to the type of crime itself, [rape], rather than similarities peculiar to both offenses." *Id.* (quoting *Ford*, 484 S.W.2d at 730).

In *Lazcano*, Lazcano was charged with murder by strangulation. 836 S.W.2d at 658. Although witnesses had seen the victim leave a nightclub with Lazcano on the night of the murder, the identity of the assailant was at issue. *Id.* To show identity, the trial court admitted the testimony of an eighteen-year-old female who had met Lazcano six weeks before and had an encounter with him in which, after she voluntarily left to be alone with him, he became aggressive, forced her to the ground, and started to choke her. *Id.* Finding an abuse of discretion by the trial court in admitting the evidence, the court of appeals explained that the similarities between the crimes would be "common to many cases" and that "nothing within the instant 'similar' facts indicates an unusual and distinctive method of commission of an offense such that it can be considered an earmark of the perpetrator's handiwork." *Id.* at 659.

Here, Perez is correct in his assertion that, as in *Avila* and *Lazcano*, certain similarities between the offense at issue and the extraneous offense are merely similarities common to the type of crime at issue—burglary. Among these similarities are that both burglaries occurred during mid-afternoon, that the perpetrator used force to gain entry through the back door in both

5

cases, and that, in each instance, the master bedroom was searched and jewelry was taken. However, the burglaries are significantly similar in that they occurred in close proximity on the same day and, in both cases, witnesses observed a man wearing blue scrubs and a hat around the same time that the crime was committed. Perez cites *Ford v. State* for the proposition that "out-of-the-ordinary clothing is not necessarily distinctive for the purpose of demonstrating this to be a signature offense," but in *Ford*, the unique clothing was a purple shirt, not the type of clothing that is worn only in specific occupations and is, essentially, a uniform. *See* 484 S.W.2d 727, 730 (Tex. Crim. App. 1972). Even taking into account Perez's assertion that there are a "large number of medical and health care jobs in the Austin metropolitan area," unknown persons wearing blue scrubs are not often seen wandering residential neighborhoods. Given that Perez, who is not a health care worker, was found to be in possession of two pairs of blue scrubs when a search warrant of his residence was executed, admission of the Edwards Hollow Run offense for purposes of identification was a proper exercise of discretion by the district court. *See Montgomery*, 810 S.W.2d at 390.

As to the admissibility of the Edwards Hollow Run offense, Perez also argues that the State violated his right to due process by misleading the trial court as to facts supporting the admission of the extraneous burglary to establish identity. According to Perez, the facts of the Edwards Hollow Run "significantly differed" from those of the Gun Metal Drive burglary. Although there were, in fact, dissimilarities between the two burglaries, the record contains no evidence that the State was intentionally misleading the court rather than simply arguing its position that the burglaries were sufficiently similar to amount to signature offenses. Even if we could find such evidence in the record, however, error is harmless as we have determined that the "signature"

element of the two crimes was not in the dissimilarities cited by Perez, but in witness identification, in both cases, of an unknown male in blue medical scrubs and a hat in close proximity both in time and location of the crime. As noted, the other similarities (or dissimilarities) are merely similarities that would be common to the type of crime itself and, unlike the evidence of the scrubs, do not affect our determination as to the admissibility of evidence of the extraneous offense. Accordingly, we overrule Perez's second and third points of error.

In his fourth point of error, Perez argues that the trial court erred in admitting the testimony of evidence of 14-year-old Chase Johnston's identification of Perez's photo from a photo array. According to Perez, the procedures used in the identification were impermissibly suggestive and, therefore, Chase's identification of Perez was suspect.

We apply a de novo standard of review to the question of whether an identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *Page v. State*, 125 S.W.3d 640, 646 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). A pretrial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Barley v. State*, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995). When challenging the admissibility of pretrial identifications, a defendant has the burden to show, by clear and convincing evidence based on the totality of the circumstances, that the pretrial identification procedure was impermissibly suggestive and that it created a substantial likelihood of irreparable misidentification. *Simmons*, 390 U.S. at 384; *Barley*, 906 S.W.2d at 32-34. Only if the pretrial identification procedure proves impermissibly suggestive

7

do we examine whether it tainted the identification. *Barley*, 906 S.W.2d at 34 (citing *Neil v. Biggers*, 409 U.S. 188 (1972)). Factors considered in assessing any improper effect on the identification include: (1) the witness's opportunity to view the criminal act, (2) the witness's degree of attention, (3) the accuracy of the suspect's description, (4) the level of certainty at the time of confrontation, and (5) the time between the crime and confrontation. *Id.* at 34-35. "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Braithwaite*, 432 U.S. 98, 114 (1977).

As Perez argues here, suggestiveness may be created by the manner in which the pretrial identification procedure is conducted, for example, by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array. *Ibarra v. State*, 11 S.W.3d 189, 196 (Tex. Crim. App. 1999). Here, according to Perez, the identification procedure was suggestive. About a week after Chase identified the wrong individual in the first photo array, a second photo array that included a different and more recent photo of Perez was presented. Besides Perez, however, the second array was comprised of a completely new set of people. In addition, Perez argues, the second array was suggestive in that Perez was pictured in a "collarless V-necked top, reminiscent of a medical scrub, and possibly a jail scrub." Further, in contrast to the "dark or drab colors" of the shirts worn by the men in the other pictures, the shirt worn by Perez was a "noticeable bright yellow."

We need not determine whether the procedures used were impermissibly suggestive such that they created a substantial likelihood of misidentification because, even assuming that Perez

8

could prevail on this argument, any error is harmless. Even without Chase's identification of Perez, as discussed below, the evidence was sufficient to support the conviction.[1]

In his fifth point of error, Perez argues that the State violated Perez's right to due process by withholding evidence that Chase had not simply failed to identify Perez when presented with the first photo array, but had identified a different individual. According to Perez, had this information been properly communicated, the result of the suppression hearing would have been different.

Under *Brady v. Maryland*, the suppression by the prosecution of evidence favorable to an accused upon violates due process where the evidence is material either to guilt or punishment. 373 U.S. 83, 87 (1963). However, when previously withheld evidence is disclosed at trial, the defendant's failure to request a continuance waives any *Brady* violation. *Gutierrez v. State*, 85 S.W.3d 446, 452 (Tex. App.—Austin 2002, pet. ref'd). Because defense counsel did not request a continuance at the time the witness indicated that he had identified the wrong person in the first photo array, Perez has waived any *Brady* violation. *See id.*

Even if error was not waived, Perez cannot meet his burden under *Brady* of proving that "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *See Webb v. State*, 232 S.W.3d 109, 115 (Tex. Crim. App. 2007) (quoting *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App.

---

[1] In addition, the jury presumably gave little weight to Chase's identification, as the jury was made fully aware of the identification procedures used when, at trial, Chase testified that he had identified the wrong person when shown the first photo array. In addition, Chase failed to identify Perez in the courtroom.

2002)).[2] As noted, the State relied heavily on evidence that an unknown man wearing blue scrubs and a hat had knocked on a neighbor's door around the time the burglary was committed. Chase's identification of this man was not crucial. What was crucial was the observation of such a person, the fact that Perez was wearing blue scrubs when arrested, and the later recovery of two pairs of blue medical scrubs from Perez's residence. As discussed in more detail below, even absent any evidence of Chase's identification, the evidence is sufficient to support the judgment of conviction. Accordingly, we overrule Perez's fifth point of error.

In a sixth point of error, Perez argues that, under the decision of the United States Supreme Court in *Arizona v. Gant*, No. 07-542, 2009 LEXIS 3120 (Apr. 21, 2009), the search of Perez's car at the time of his arrest was unreasonable and, therefore, the trial court should have granted his motion to suppress the evidence obtained from the search. As discussed more fully below, we need not consider the merits of this argument because even absent the evidence recovered from Perez's vehicle at the time of the arrest, the evidence is sufficient to support the judgment of conviction. Accordingly, we overrule Perez's sixth point of error.

Perez also challenges the factual sufficiency of the evidence to support his conviction. In a factual-sufficiency review, the evidence is reviewed in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Evidence is factually insufficient when (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly

---

[2] In addition, it appears from the record that defense counsel was made aware of this evidence as early as the suppression hearing, more than four months before trial. *See Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002); *Jackson v. State*, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976) ("We cannot conclude that the prosecutor violated his duty to disclose favorable evidence to the appellant when the evidence was already available to him.").

10

unjust; or (2) the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id.* An appellate court must be appropriately deferential to the jury's verdict in order to avoid substituting its own judgment for that of the fact-finder. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). We may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

Based on our admissibility determinations above, we consider the following evidence in determining its sufficiency to support Perez's conviction:

- *Fingerprints found inside the Gun Metal Drive residence*: When responding to the burglary, Officer Easley lifted fingerprints from inside the residence and submitted them to the Austin Police Department's fingerprint analysis section. The prints were examined by Sharon Cook, a fingerprint expert, who compared the prints to a fingerprint exemplar from the national fingerprint identification database for an individual named "Anthony James Perez" with a birthdate of March 21, 1964. Cook testified that the prints lifted from the residence matched the prints for the right middle and ring fingers for Perez on the exemplar. As Perez notes, Cook failed to restate before the jury the exact words she had stated before the judge—that Perez was the same individual whose prints appeared on the fingerprint exemplar. However, the jury was presented with sufficient evidence to link the fingerprints found at the residence to Perez, including the testimony of Cook, a fingerprinting expert, that the prints lifted from the Gun Metal Drive residence matched those contained in the national database for an individual with the same name and birthdate as Perez.

- *Testimony of Chase and Cheryl Johnston*: Chase testified that a man wearing blue medical scrubs and a hat had knocked on his door the day of the burglary asking about a doctor. Cheryl testified that, on the day of the burglary, Chase had called her to tell her that a man wearing blue medical scrubs and a hat and holding money in his hand had come to their door looking for a doctor.

- *Edwards Hollow Run "signature offense"*: The Edwards Hollow Run burglary occurred nearby on the same day and in similar circumstances—an unknown man wearing blue scrubs and a hat was observed by a resident of the neighborhood leaving the house of neighbors, who were out of town at the time, with a blanket.

11

- *Information gained during the arrest*: When Perez was pulled over and ultimately arrested on July 28, 2006, he was wearing blue medical scrubs.

- *Property recovered from search of Perez's residence*: Following the execution of a search warrant, police recovered two pairs of blue medical scrubs from Perez's residence as well as a watch that had been stolen in the Edwards Hollow Run burglary.

Viewed in its totality, the evidence is factually sufficient to support the judgment of conviction. Accordingly, we overrule Perez's first point of error.

Having overruled Perez's points of error, we affirm the judgment of conviction.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 23, 2009

Do Not Publish