Alfonso CASTILLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–95–00002–CR.

Court of Appeals of Texas, El Paso.

Oct. 19, 1995.

Discretionary Review Refused Jan. 24, 1996.

**126**

Jack Stern, Houston, for Appellant.

Ricky B. Smith, District Attorney, Lamesa, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

### OPINION

BARAJAS, Chief Justice.

Alfonso Castillo appeals a conviction for the offense of indecency with a child. After finding Appellant guilty as charged in the indictment, the jury assessed punishment at imprisonment for a term of two years in the Texas Department of Criminal Justice, Institutional Division. We reverse.

### I. SUMMARY OF THE EVIDENCE

The indictment alleged that Appellant intentionally and knowingly engaged in sexual contact with Jessica Tejeda Sarmiento, a child younger than seventeen years of age and not the spouse of Appellant, by touching her genitals with intent to arouse and gratify Appellant's sexual desire. Jessica was six-years-old at the time of this offense. The complainant's mother, Bertha Tejeda, testified that Appellant is Ms. Tejeda's uncle. On the day this offense occurred, Ms. Tejeda, accompanied by her husband, Fernando Sarmiento, and the complainant, went to Appellant's home to visit Ms. Tejeda's daughter and aunt. At one point during the day, Ms. Tejeda could not find Jessica. She found Jessica outside alone with Appellant. Ms.

Tejeda described Jessica as appearing scared. Believing something was wrong, Ms. Tejeda asked Jessica whether Appellant had touched her. Jessica replied that he had touched her "many, many times." Jessica told her mother that Appellant had "went under her pants" and touched her "private parts." Upon hearing this, Ms. Tejeda and her family immediately left Appellant's home. Ms. Tejeda told her husband what had happened as they drove home.

Fernando Sarmiento testified that when his wife discovered that Jessica was outside alone with Appellant, she became excited and went outside to see about Jessica. She returned in a little while and demanded that they leave. Before they left, Mr. Sarmiento saw Appellant walk into the kitchen. He described Appellant as breathing heavily and sweating, and appearing very nervous, "like he done [sic] something wrong." Mr. Sarmiento said that Appellant walked past him without saying anything and went straight to his bed. When Mr. Sarmiento asked Jessica to hug Appellant before they left, she refused. Mr. Sarmiento did not learn of what had happened until later.

Jessica testified that she went to Appellant's house with her parents. She went to the park with her father and played for a little while. When they returned from the park, she was alone outside with Appellant. She told the jury that Appellant touched her "wrong spot" with his finger. She described her "wrong spot" as the place where she "peepees." She said that Appellant touched her both outside and inside of her clothes.

Over Appellant's objections, the trial court permitted Mary Lou Chavez and Rosa Tejeda to testify concerning extraneous offenses committed against them by Appellant. The court found that the evidence was relevant as probative of Appellant's intent to arouse or gratify his sexual desires. First, Mary Lou Chavez, who is Appellant's twenty-year-old step granddaughter, testified about two extraneous offenses committed by Appellant while she lived in Appellant's home many years earlier. Chavez lived in Appellant's home until she was eighteen years' old. She said that when she was between six and eight

years of age, Appellant rubbed her "vagina area" with his fingers on two different occasions.

Rosa Tejeda, the twenty-five-year-old daughter of Bertha Tejeda, testified that Appellant is her step uncle. She lived in Appellant's home until two months after the instant offense occurred. When she was eight or nine years of age, Appellant pulled her pants down and rubbed his penis between her buttocks. When her aunt called for her, Appellant told her to be quiet. This incident occurred in a camper trailer behind the house. On another occasion when she was approximately seven years' old, Appellant stuck his finger in her buttocks as he carried her to bed. Finally, Rosa told the jury that she sat on Appellant's lap while he drove Rosa and her cousins to get ice cream. She believed that she felt an erection. Rosa did not testify as to her age when this third incident occurred, but she described herself as a child.

## II. DISCUSSION

In his sole point of error, Appellant asserts that the trial court erred in admitting these five extraneous offenses at guilt-innocence in violation of TEX.R.CRIM.EVID. 404(b) and 403. It is the general rule that an accused may not be tried for some collateral crime or for being a criminal generally. TEX. R.CRIM.EVID. 404(b); *Williams v. State*, 662 S.W.2d 344, 346 (Tex.Crim.App.1983). In the face of a proper objection, evidence of other wrongful acts is not admissible to prove the character of the person to establish that he acted accordingly regarding the alleged offense. *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex.Crim.App.1991) (opin. on reh'g); *Lazcano v. State*, 836 S.W.2d 654, 657 (Tex.App.—El Paso 1992, pet. ref'd). An extraneous offense may be admissible, however, if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith. *Montgomery*, 810 S.W.2d at 372, 387; *Lazcano*, 836 S.W.2d at 657. Evidence which logically serves such purposes as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" is relevant beyond its

tendency to prove conforming character. *Montgomery*, 810 S.W.2d at 387; *Lazcano*, 836 S.W.2d at 657; TEX.R.CRIM.EVID. 404(b). Pursuant to TEX.R.CRIM.EVID. 403, such evidence is presumed admissible subject to exclusion only if the opponent of the evidence timely objects and demonstrates that the danger of unfair prejudice substantially outweighs its probative value. *Montgomery*, 810 S.W.2d at 389; *Lazcano*, 836 S.W.2d at 657.

Whether objected-to evidence of other crimes, wrongs, or acts has relevance apart from character conformity is a question for the trial court. *Montgomery*, 810 S.W.2d at 391; *Garcia v. State*, 827 S.W.2d 27, 30 (Tex.App.—Corpus Christi 1992, no pet.). The trial court must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Id.* An appellate court should not reverse the trial court whose ruling was within the zone of reasonable disagreement. *Id.* An appellate court should not make a *de novo* review of the record with a view of making a wholly independent judgment whether the probative value of the extraneous act is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 810 S.W.2d at 392; *Garcia*, 827 S.W.2d at 30. Appellate review, however, requires more than merely deciding that the trial court did in fact conduct the required balancing and did not simply rule arbitrarily and capriciously. *Id.* This Court should measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made. *Id.*

Relevant criteria include the fact that the State had other convincing evidence to establish the ultimate issue to which the extraneous misconduct was relevant. *See Montgomery*, 810 S.W.2d at 392–93; *Garcia*, 827 S.W.2d at 30. Under this approach, we determine the admissibility of extraneous offense evidence by reviewing not only the relevance of that evidence, but the State's need for it as well. *See Montgomery*, 810 S.W.2d at 392; *Garcia*, 827 S.W.2d at 30. Applying this criteria to the issue of intent,

evidence of extraneous acts is admissible to prove scienter, where intent or guilty knowledge is an essential element of the State's case *and cannot be inferred from the act itself*. *See Montgomery*, 810 S.W.2d at 392; *Garcia*, 827 S.W.2d at 30.

The State, maintaining that Appellant's intent is not inferable from the act itself, argues that the extraneous offense evidence has relevance apart from character conformity in that it tends to show that Appellant engaged in the conduct with the requisite intent to arouse or gratify his sexual desire. Regardless of whether the evidence is relevant to show Appellant's intent, the State had no compelling need for it as Appellant's intent is inferable from the conduct committed. The evidence showed that Appellant, while alone with the complainant, touched her genital area "many, many times" both inside and outside of her clothes. After the complainant told her mother what had happened, Appellant acted strangely and appeared to Mr. Sarmiento as if he had done something wrong. We find that the intent to arouse sexual desire can be inferred from the act itself and Appellant's subsequent behavior. *See Garcia*, 827 S.W.2d at 30–31 (intent to arouse sexual desire could be inferred from testimony that defendant grabbed child victim, placed his hands on her breasts, and rubbed them several times, like a massage); *see Kiser v. State*, 893 S.W.2d 277, 282 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd.) (State had no need to present evidence that defendant assaulted and choked extraneous offense victim for the purpose of proving the intent behind sexually assaulting and choking the complainant because the defendant's intent was evident from the conduct). Indeed, as stated in *Garcia*, this would be the *only* plausible explanation for Appellant's conduct. *Garcia*, 827 S.W.2d at 30–31. Thus, the State had no compelling need for this evidence in order to show the requisite intent. Further, while this evidence is relevant, it has only minimal probative value, and is inherently inflammatory. *See Montgomery*, 810 S.W.2d at 397; *Garcia*, 827 S.W.2d at 31. For these reasons, we conclude that the trial court abused its discretion in failing to exclude it under Rule 403.

Having determined that the trial court erred in admitting this evidence, we must examine whether the error was harmless. Tex.R.App.P. 81(b)(2). Rule 81(b)(2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment. *Harris v. State*, 790 S.W.2d 568, 585 (Tex. Crim.App.1989). We must determine whether, beyond a reasonable doubt, the error made no contribution to the conviction or the punishment. *Burks v. State*, 876 S.W.2d 877, 904–05 (Tex.Crim.App.1994); *Perez v. State*, 824 S.W.2d 565, 568 (Tex.Crim.App.1992).

As noted in the Rule 403 analysis, the evidence possessed only marginal probative value with respect to Appellant's intent to arouse or gratify his sexual desires. Further, even though the trial court instructed the jury to consider the extraneous offenses only as they related to that specific intent, it is unlikely that the instruction neutralized the danger that the jury might have considered the extraneous offenses as character conformity evidence. The prosecutor argued that Appellant preyed upon young girls because he could control them and they would not tell what he had done, and when they became too old to be controlled anymore, he moved on to a new victim. Along this same line, the prosecutor argued that the two extraneous offense victims came forward and testified against Appellant because he had to be stopped. Thus, the State utilized the evidence, not to show that Appellant possessed the requisite intent, but to demonstrate that Appellant's conduct conformed to his character. Under these circumstances, we cannot conclude beyond a reasonable doubt that the error did not contribute to Appellant's conviction. Point of Error No. One is sustained.

Having sustained Appellant's sole point of error, the judgment of the trial court is reversed and the cause remanded for a new trial.