COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
GEORGE CASIQUE,                                         )                  No. 08-04-00271-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  184th District Court
)
THE STATE OF TEXAS,                                   )                  of Harris County, Texas
)
                                    Appellee.                          )                  (TC# 925494)

O P I N I O N

            George Casique appeals his conviction for aggravated robbery. A jury found Appellant guilty
of the offense and sentenced him to forty years in the Texas Department of Criminal Justice
Institutional Division and a $5,000 fine. We affirm.
FACTUAL SUMMARY
            On September 13, 2002, Marvin Martinez and Matilde Hernandez went to Gustavo Cantu’s
apartment to get information for work the next day. Around 10 that evening, they went out to
Gustavo’s truck in the parking lot. A white Ford truck with a blue stripe flange was parked in front
of it. Three men exited the truck and approached Gustavo and his co-workers. The driver, wearing
a dark shirt with a flap on the sleeve reading Houston Police, said he was a police officer looking
for drugs. He pointed a silver pistol at Gustavo and told him to put his hands on the hood. He took
Gustavo’s wallet, replaced it when he found no money, and then rummaged through Gustavo’s
pockets. Gustavo was ordered to open the truck and the man searched the console. After the robbers
drove off, Gustavo wrote down the license plate number and called the police. He later identified
Appellant as the man who robbed him. Marvin and Matilde’s testimony was substantially the same
and they also identified Appellant as one of the robbers. 
            Appellant presented an alibi defense through his sister and mother, who both testified that
he was with them at the mother’s home throughout the evening of September 13. His sister testified
that Appellant was covered in tattoos at the time of the robbery. This characteristic will become
important in our discussion of the evidentiary issues.
EXTRANEOUS OFFENSES
            In Point of Error Two, Appellant complains that the trial court erred in admitting evidence
of extraneous offenses during the guilt/innocence phase. He concedes that the extraneous offense
was strikingly similar to the charged offense and that it did not take excessive time to develop the
testimony. But he complains that the evidence was not compelling and that it was not needed by the
State. He concludes these factors weigh against admission. 
Standard of Review
            We review a trial court’s evidentiary rulings for an abuse of discretion. Montgomery v. State,
810 S.W.2d 372, 391 (Tex.Crim.App. 1990). We give the trial court wide discretion and latitude
in its decision and must not reverse an evidentiary ruling as long as it is within the zone of
reasonable disagreement. Montgomery, 810 S.W.2d at 391.
Testimony of the Extraneous Offense
            During rebuttal, the State informed the court that it wanted to present evidence of an
aggravated robbery similar in motive and plan to prove identity and refute an alibi. The extraneous
offense took place on September 10, about three days before the charged offense. Four or five
people dressed in police uniforms committed the robbery. The robbers were shouting “police,
police” and took the victims’ money using the same kind of gun. The victims were Hispanic men,
the robbery occurred at an apartment complex about the same time of night, and the robbers said
similar things and searched for property in a similar way. 
            The State then called Francisco Maldonado to the stand to make an identification of
Appellant. Maldonado testified that he was robbed on September 10 and later met with Detective
Hernandez to view a photo spread. Maldonado took his time in looking at the photos and finally
pointed to a picture he recognized. He identified Appellant and stated, “That looks like the guy. I’m
not going to say positive, but that sure favors the guy right there.” Maldonado testified that he saw
the same person sitting in the courtroom and identified Appellant.
            Appellant objected, arguing that Maldonado made only a tentative identification rather than
a positive identification and claimed that other victims had a better opportunity to view the robber. 
See Tex.R.Evid. 404(b). The trial court overruled the objection. Appellant then objected that the
evidence was more prejudicial than probative since the crime was very similar and only a tentative
identification was made. See Tex.R.Evid. 403. The trial court also overruled that objection and
allowed Maldonado to testify about the robbery. 
            On the evening of September 10, 2002, Maldonado went to a pool hall with his brother where
he had four or five beers. The brothers then drove to an apartment complex. When they arrived in
the parking lot, Maldonado parked the truck and saw a Nissan or Toyota car behind them. The
lighting was good due to the vehicle headlights. Four or five occupants from the car approached
Maldonado’s truck. They told him they were Houston police officers and showed Maldonado and
his brother the patches on their arms. Their shirts were short-sleeved and black. One of the robbers
searched Maldonado and took his money and wallet. He believed the robbers were officers since
they searched their pockets, asked them to put their hands on the car, and told them to spread their
legs. When the robbers left, Maldonado and his brother jumped back into the truck and followed
the car to get the license plate number. Maldonado then called the police and a few days later met
with Detective Hernandez to view photo spreads.
            Maldonado had gotten a brief look at Appellant, but long enough to identify him. Maldonado
did not notice any distinguishing characteristics about the robbers, nor did he notice any tattoos. 
Appellant then stood to exhibit the tattoos covering his wrist, forearm, and neck. Maldonado
countered that he was looking at the face of his robber, not his body.
Rule 404(b)
            As a rule, an accused may not be tried for some collateral crime or for being a criminal
generally. Tex.R.Evid. 404(b); Williams v. State, 662 S.W.2d 344, 346 (Tex.Crim.App. 1983). In
the face of a proper objection, evidence of other wrongful acts is not admissible to prove the
character of the person to establish that he acted accordingly regarding the alleged offense.
Montgomery, 810 S.W.2d at 386; Lazcano v. State, 836 S.W.2d 654, 657 (Tex.App.--El Paso 1992,
pet. ref’d). An extraneous offense may be admissible, however, if it has relevance apart from its
tendency to prove the character of a person in order to show that he acted in conformity therewith. 
Montgomery, 810 S.W.2d at 387; Lazcano, 836 S.W.2d at 657. Evidence which logically serves such
purposes as “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident” is relevant beyond its tendency to prove conforming character. Montgomery,
810 S.W.2d at 387; Lazcano, 836 S.W.2d at 657; Tex.R.Evid. 404(b). Extraneous offenses are also
admissible to rebut a defensive theory. Yohey v. State, 801 S.W.2d 232, 236 (Tex.App.--San
Antonio 1990, pet. ref’d). Whether objected-to evidence of other crimes, wrongs, or acts has
relevance apart from character conformity is a question for the trial court. Montgomery, 810 S.W.2d
at 391; Castillo v. State, 910 S.W.2d 124, 127 (Tex.App.--El Paso 1995, pet. ref’d). The trial court
must conclude that the evidence tends in logic and common experience to serve some purpose other
than character conformity to make the existence of a fact of consequence more or less probable than
it would be without the evidence. Id. 
            Appellant presented alibi evidence through his sister and mother who both testified he was
with them the evening of the robbery. Appellant raised the issue of his identity as the robber by
presenting evidence that he was covered in tattoos yet none of the victims reported that
distinguishing characteristic to the police. We conclude the extraneous offense evidence was
admissible under Rule 404(b) to refute both Appellant’s alibi defense and the issue of identity. 
Yohey, 801 S.W.2d at 236; Montgomery, 810 S.W.2d at 387. Now, we must examine admissibility
under Rule 403.
Rule 403
            Rule 403 provides: 
Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative
evidence. 

Tex.R.Evid. 403. Extraneous offense evidence, which is relevant beyond proof of character
conformity, is presumed admissible subject to exclusion under Rule 403 only if the opponent of the
evidence timely objects and demonstrates that the danger of unfair prejudice substantially outweighs
its probative value. Montgomery, 810 S.W.2d at 389; Lazcano, 836 S.W.2d at 657. An appellate
court should not engage in a de novo review of the record in order to determine whether the
probative value of the extraneous act is substantially outweighed by the danger of unfair prejudice.
Montgomery, 810 S.W.2d at 392; Castillo, 910 S.W.2d at 127. In conducting our review, we must
measure the trial court’s ruling against the relevant criteria by which a Rule 403 decision is to be
made. Id. 
            Relevant criteria include whether the ultimate issue was not seriously contested by the
opponent; whether the State had other convincing evidence to establish the ultimate issue to which
the extraneous misconduct was relevant; whether the probative value of the misconduct evidence
was not, either alone or in combination with other evidence, particularly compelling; and whether
the misconduct was of such a nature that a jury instruction to disregard it for any but its proffered
purpose would not likely have been efficacious. Montgomery, 810 S.W.2d at 392-93. Under this
approach, we determine the admissibility of extraneous offense evidence by reviewing not only the
relevance of that evidence, but the State’s need for it as well. See id. at 392; Garcia v. State, 827
S.W.2d 27, 30 (Tex.App.--Corpus Christi 1992, no pet.). 
            Appellant concedes that the extraneous offense evidence did not have the potential to impress
the jury in some irrational but nevertheless indelible way and that the State did not spend an
excessive amount of time developing Maldonado’s testimony. Thus, we focus on whether the
evidence was compelling and whether the State needed the evidence.
            Appellant contended that although the evidence might make his identity more probable, it
was not compelling since Maldonado’s identification was questionable. Appellant also argued that
the State had no need for the evidence since the State had proven its case through the three
complainants. He claimed that although the complainants did not notice his tattoos, they never
wavered on their identifications during trial. He thus concludes that these two factors weighed
heavily against admission of the extraneous evidence. We disagree.
            First, we must examine how compelling the extraneous offense was to the issue of identity
in the charged offense. In performing this review, we also examine the strength of the evidence
connecting Appellant to the offense. See Montgomery, 810 S.W.2d at 390. 
            Here, the offenses were very similar. In both robberies, the assailants confronted their
victims, who were Hispanic males, after driving into an apartment complex parking lot. Both times
the assailants were wearing shirts bearing Houston police insignia and told the victims they were
police officers. All the victims were told to put their hands on the vehicle, spread their legs, and they
were searched. Money was taken in both robberies by force and with a silver pistol. 
            “When the proponent has other compelling or undisputed evidence to establish the
proposition or fact that the extraneous misconduct goes to prove, the misconduct evidence will weigh
far less than it otherwise might in the probative-versus-prejudicial balance.” Montgomery, 810
S.W.2d at 390. At trial, the victims of the charged offense were adamant in their identification of
Appellant as one of the robbers even following cross examination. However, the defense attacked
the identification of Appellant by repeatedly referencing Appellant’s tattoos. Since identity was still
at issue, the first factor weighs slightly in favor of admission. See Karnes v. State, 127 S.W.3d 184,
192-93 (Tex.App.--Fort Worth 2003, no pet.). 
            Next, we must determine the State’s need for the evidence. Appellant adamantly contested
his identity as the robber, presenting an alibi defense and pointing out the victims did not tell the
police about his tattoos. When identity is a hotly contested issue, the State’s need for extraneous
offense evidence is strong. See Karnes, 127 S.W.3d at 193-94. The State had a great need for the
evidence in order to rebut Appellant’s defensive theories. Thus, the fourth factor weighs heavily in
favor of admission of the evidence.
Conclusion
            The extraneous offense evidence was admissible under Rule 404(b) to rebut a defensive
theory and to establish identity. Our review of the record and the relevant criteria under Rule 403
demonstrate that the probative value of the extraneous offense evidence was not substantially
outweighed by its prejudicial impact since all factors weigh in favor of admission of the evidence.
Consequently, we find no abuse of discretion and overrule Point of Error Two. See Montgomery,
810 S.W.2d at 392-93.
MOTION TO SUPPRESS
            In Point of Error One, Appellant complains that the trial court erred by admitting his
confessions during punishment. Appellant contended that the confessions were involuntary and
coerced. 
Standard of Review
            We review a trial court’s ruling on a motion to suppress using the bifurcated standard of
review articulated in Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v.
State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El
Paso 2002, pet. ref’d). Under this standard, we afford almost total deference to the trial court’s
express or implied determination of historical facts and review de novo mixed questions or fact and
law not turning on the evaluation of credibility and demeanor. Guzman, 955 S.W.2d at 89. Whether
a confession is voluntary is a mixed question of law and fact. Garcia v. State, 15 S.W.3d 533, 535
(Tex.Crim.App. 2000). 
The Testimony 
            During the punishment phase, a hearing was held outside the presence of the jury. Detective
Hernandez testified that he met with Appellant while he was under arrest. Appellant was Mirandized
and understood his rights. He waived his rights, agreed to speak with Hernandez, and gave a
statement. Appellant never requested an attorney nor asked that the interview be terminated. 
Hernandez did not coerce or threaten Appellant into giving a statement nor did he indirectly promise
Appellant anything in exchange for his statement. Appellant was not denied any necessities and was
not under the influence of alcohol or drugs. Hernandez typed Appellant’s statements as Appellant
spoke and then had Appellant read them, make any changes, and sign them. Appellant claimed that
he gave the statements because Hernandez promised to work out a deal. 
            During cross-examination, Hernandez admitted that he told Appellant he might file six or
seven robbery charges and two burglary charges against him and that the ATF might also file
charges. Hernandez admitted that he implied Appellant was in trouble and needed to speak with
officers to get out of trouble, but he did not consider that a promise since Appellant did not have to
speak with him and could have ended the interview at any time. Hernandez did not recall telling
Appellant that if he would cooperate, no additional charges would be filed against him.
            Appellant testified that Hernandez retrieved him from his cell around 8:30 in the morning,
telling him he had some questions. Appellant remembered the first interview lasting three hours and
the officer telling him he was in big trouble if he didn’t provide information. They spoke about this
case and several other robberies. Appellant insisted he requested a lawyer but that the officer
responded he was just there to ask questions and Appellant would not be put in a line-up. Hernandez
said he could get Appellant a deal and would not file charges if Appellant gave him information
about some robberies. Appellant also had a second meeting with Hernandez and another officer. 
The other officer threatened him, but Hernandez did not recall any threats being made. Appellant
admitted that he signed the statements but said he did not read them since he had only a seventh
grade education. Hernandez responded that Appellant never told him he could not read or write. 
The trial court denied the motion to suppress.
Voluntariness
            “A statement of an accused may be used in evidence against him if it appears that the same
was freely and voluntarily made without compulsion or persuasion.” Tex.Code Crim.Proc.Ann.
art. 38.21 (Vernon 2005); State v. Terrazas, 4 S.W.3d 720, 723 (Tex.Crim.App. 1999). Whether a
defendant’s statement is voluntary is determined from the totality of the circumstances surrounding
the giving of his statement. See Penry v. State, 903 S.W.2d 715, 748 (Tex.Crim.App.), cert. denied,
516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995). A statement is not voluntary if there is
“official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have
been the product of an essentially free and unconstrained choice by its maker.” Alvarado v. State,
912 S.W.2d 199, 211 (Tex.Crim.App. 1995). For a promise to render a confession involuntary, the
promise must be positive, made or sanctioned by one in authority, and of such an influential nature
as to cause a defendant to speak untruthfully. Tex.Code Crim.Proc.Ann. art. 38.21; see Martinez
v. State, 127 S.W.3d 792, 793 (Tex.Crim.App. 2004); Henderson v. State, 962 S.W.2d 544, 565
(Tex.Crim.App. 1997).
Conclusion
            Applying the appropriate standard of review, we find no abuse of discretion in the denial of
the motion to suppress since the evidence supports a finding that his confession was freely and
voluntarily given without coercion. The trial court is the sole finder of fact, and its findings will not
be disturbed on appeal if there is any supporting evidence. See Carrasco v. State, 712 S.W.2d 120,
122 (Tex.Crim.App. 1986). Since there is evidence that Appellant’s statements were voluntary, we
overrule Point of Error One and affirm the judgment of the trial court.


August 16, 2005                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)