COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-293-CR

 

 

JAMES ASHLEY MAYER                                                       APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

             FROM THE 371ST
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------








James Ashley Mayer appeals from the jury verdict
convicting him of two counts of aggravated sexual assault of a child and two
counts of indecency with a child.  The
trial judge assessed his punishment at confinement for life on each aggravated
sexual assault count and twenty years=
confinement for each count of indecency with a child.  In three points, appellant contends that the
trial court reversibly erred by admitting the following into evidence at
guilt-innocence:  that appellant had
given alcoholic beverages to the complainant and her also underage friend, that
appellant pushed his son into a wall during a physical altercation between
appellant and the complainant, and a detailed story about the sexual assault of
a child that police found on a computer disk in appellant=s
home.  We affirm.

Background








The
complainant, appellant=s daughter, testified that
appellant regularly touched her breasts and genitals, placed his tongue and
mouth on her breasts and genitals, and penetrated her with his finger during an
approximately three-year period when she was between eleven and fourteen years
old.  He also attempted to have vaginal
intercourse with her, but according to complainant, he could not complete the
act, and all that happened was Agenital-to-genital@
contact.  During this time, appellant
slept in the same bed as the complainant; he did these things when he thought
she was asleep or when they were lying down in bed.  Appellant=s
brother and stepsister corroborated the complainant=s testimony
that appellant and the complainant slept in the same bed; for a time, appellant=s
stepsister slept in the bed as well and her brother slept in the same room on
the floor.  However, both testified that
they were heavy sleepers and do not recall anything happening between appellant
and the complainant. To highlight the
inappropriate nature of the relationship between appellant and the complainant,
the State offered evidence under article 38.37 of the code of criminal
procedure, which the trial court admitted over appellant=s
objections.  Tex. Code Crim. Proc. Ann.
art. 38.37 (Vernon Supp. 2008).  First,
the complainant and her brother both testified about an argument between appellant
and the complainant.  During the
argument, appellant slapped the complainant; when her brother tried to
intervene, appellant pushed him into the wall. 
The complainant then pushed appellant down the nearby stairs.  The next day, complainant=s
brother skipped school, and appellant kicked him out of the house.

Next,
the complainant, her brother, and her former best friend testified that when
the complainant was in the seventh grade, appellant gave her and her friends
alcoholic beverages and that the complainant became intoxicated.  Specifically, both the complainant and her
former best friend, whom she had not seen since they were in the eighth grade,
testified that appellant, a former bartender, made them AButtery
Nipple@ shots
and gave them wine coolers.








Finally,
the trial court admitted evidence found by police when they searched appellant=s
home:  a story on a computer disk
entitled AMy First Child,@ which
is a detailed, graphic account of the sexual assault of a child with the same
first name as complainant by a perpetrator having the same first name as
appellant.  Although many of the details
in the story are different from what the complainant testified to, some of the
acts are similar.

Appellant=s three
points on appeal complain about the trial court=s
admission of these extraneous acts.

Standard
of Review

We
review a trial court=s decision to admit or to
exclude evidence under an abuse of discretion standard.  Weatherred v. State, 15 S.W.3d 540,
542 (Tex. Crim. App. 2000); Davis v. State, No. 02-07-00177-CV, 2008 WL
3918050, at *4 (Tex. App.CFort Worth Aug. 26, 2008, pet.
filed).  A trial court does not abuse its
discretion as long as the decision to admit or to exclude the evidence is
within the zone of reasonable disagreement. 
Montgomery v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)
(op. on reh=g); Davis, 2008 WL
3918050, at *4.  And it cannot be said
that the trial court=s decision falls outside that
zone if it can be supported under any theory of law, regardless of whether the
theory was raised at trial.  Davis,
2008 WL 3918050, at *4; Lincicome v. State, 3 S.W.3d 644, 649 (Tex. App.CAmarillo
1999, no pet.).








Evidence
Admitted Under Article 38.37

The State argued that the shoving incident and
appellant=s giving alcohol to the
complainant and her friend were admissible under code of criminal procedure
article 38.37 as evidence of the relationship between the appellant and
complainant.  Under article 38.37, in a
case involving sexual offenses against a child, evidence of extraneous offenses
Acommitted
by the defendant against the child@ are
admissible notwithstanding rules 404 and 405 Afor its
bearing on relevant matters,@
including the state of mind of the defendant and the child and the previous and
subsequent relationship between the defendant and the child.  Tex. Code Crim. Proc. Ann. art. 38.37, '' 1B2; see
Tex. R. Evid. 404, 405.  Appellant argues
that evidence about him giving alcohol to the complainant=s friend
and evidence that he pushed her brother is not evidence of extraneous offenses
committed against the complainant and, thus, none of the evidence is
admissible under article 38.37.  The
State contends, however, that this evidence is same transaction contextual
evidence.

Evidence
About Alcoholic Beverages








The
State introduced the evidence about appellant giving the girls alcoholic
beverages to show that appellant favored the complainant.[2]  Other testimony in this same vein was that
after the complainant moved out of the house, appellant bought her a car and
paid her bills; he did not do the same for her brother.  According to the State, appellant=s giving
alcohol to the complainant=s
friends was an act directed at the complainant, not just her friends, and
further exemplified the inappropriate relationship between appellant and the
complainant.








Appellant
objected to the admission of this testimony for two reasons:  (1) appellant=s giving
the girls alcoholic beverages was not temporally related to the sexual conduct,
nor was it a part of the sexual offenses; and (2) it was overly prejudicial
because it tended to show only character conformity.  When the State repeatedly urged the admission
of the evidence under article 38.37, appellant did not object that the extraneous
matter was inadmissible because the acts were directed at someone other than
the complainant.  However, appellant=s
complaint on appeal is that evidence of bad acts against a third party is not
admissible to show relationship under article 38.37.  Accordingly, appellant=s
complaint on appeal does not comport with his complaint at trial and, thus, is
not preserved for our review.  See
Heidelberg v. State, 144 S.W.3d 535, 538 (Tex. Crim. App. 2004); Bell v.
State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert. denied, 522
U.S. 827 (1997).  Moreover, the trial
court did not abuse its discretion by admitting the evidence as to the
complainant under article 38.37 because it serves to show, among other things,
appellant=s inappropriate treatment of the
complainant as adult-like.  See
Tex. Code Crim. Proc. Ann. art. 38.37; cf. Jones v. State, 119
S.W.3d 412, 418, 420 (Tex. App.CFort
Worth 2003, no pet.) (holding that appellant=s act of
providing alcohol to groups of girls before trying to take off their swimsuit
tops and bottoms was relevant to show how appellant=s
inappropriate relationship with complainant developed through group activities
directed at girls simultaneously).  We
overrule appellant=s second point.

Evidence
About Shoving Incident








Appellant
also contends that the evidence about his shoving his son, the complainant=s
brother, during an argument with the complainant is not admissible under
article 38.37 because his physical act towards his son was not directed at the
complainant.  At trial, he objected that
the physical assault had Ato do with [the complainant=s
brother], not@ the complainant.  The trial court determined that the conduct
was admissible because it occurred Ain front
of [the complainant] and it was violence against [her] and it explains why
[she] was in the relationship she was with the [appellant] and alone in the
house.@            Here, we cannot conclude that the trial court
abused its discretion in admitting this evidence under article 38.37.  Although the physical act of appellant=s
shoving his son was not a discrete act of physical violence against the
complainant, it occurred within the context of acts of violence by appellant
against her and is further evidence of appellant=s
attempts to keep his son out of the relationship between him and his
daughter.  See Jones, 119
S.W.3d at 420 (holding that it was difficult to separate acts against third
parties from acts against complainant because acts were directed at group).  Appellant contends that the evidence does not
tend to show that he kicked his then eleven or twelve year old son out of the
house because he tried to interfere in the fight because there is also evidence
that his son skipped school the day after (also the day he was thrown out) and
had behavior problems.  However,
appellant was able to cross-examine both the complainant and her brother about
these alternative reasons that appellant may have had for kicking him out.








Moreover,
even if the trial court admitted this evidence in error, we discern no
harm.  The State did not dwell on or
emphasize this evidence; it was a small part of the trial.  And appellant=s
shoving his son is not as egregious as the acts alleged against his daughter
and is just as disturbing as the admissible testimony about appellant=s
slapping his daughter in the same episode. 
See Motilla v. State, 78 S.W.3d 352, 359 (Tex. Crim. App.
2002).  Accordingly, we also overrule
appellant=s third point.

Evidence
Admitted Under Rule 404(b)

Appellant also complains about the admission of a
typewritten graphic, detailed story depicting the sexual assault of a six-year-old
girl with the same name as the complainant by a perpetrator with the same name
as appellant.  Police found the disk in
appellant=s home on a computer table,
along with other personal items such as a cap and hunting knife, in a room that
appeared to be appellant=s office.  Included on the disk were file folders with
the names, AJames A. Mayer,@ AJim=s,@ and AJim=s
documents.@ 


The
State offered the evidence to show appellant=s Aintent
to arouse or gratify [his] sexual desire,@ a
required element of the indecency counts under the statute and as alleged in
the indictment.  See Tex. Penal
Code Ann. '  21.11(a)(1), (c) (Vernon
2003).  Appellant objected that the
evidence was being offered solely to prove character conformity and that it was
not admissible because appellant had not attempted to rebut any evidence of
intent other than by placing the offense at issue by pleading not guilty.  The trial court admitted the evidence because
Aof the
similarities between the story and the offense now on trial and the fact that
the [appellant] possessed it[, which] goes to show his intent.@ 








The
State first contends that appellant failed to preserve error on this point
because he did not object on the basis that intent can be inferred from the
acts themselves and thus that the State had no need for intent evidence.  However, appellant did object to the evidence
under 404(b) on the ground that there must be some rebuttal from the defense
first as to intent before the State can admit 404(b) evidence for the purpose
of showing intent.  When a party attempts
to adduce evidence of extraneous acts, the opponent of that evidence must
object in a timely fashion to preserve error on appeal.  Montgomery, 810 S.W.2d at 387.  Appellant did so here.  After the opposing party so objects, Ait is
incumbent upon the proponent of the evidence to satisfy the trial court that
the >other
crime, wrong, or act= has relevance apart from its
tendency >to prove character of a person
in order to show that he acted in conformity therewith.=@  Id. (quoting Tex. R. Evid.
404(b)).  Thus, once appellant objected
to the evidence, it was the State=s
burden, not appellant=s, to show that it was
admissible for intent purposes.  We find
no authority requiring appellant to object again after the trial court=s ruling
that such evidence is admissible. 
Accordingly, we hold that appellant properly preserved this complaint
for our review.








AIntent
can be characterized as a contested issue for purposes of justifying the
admission of extraneous offense evidence to help prove intent if the required
intent for the primary offense cannot be inferred from the act itself or if the
accused presents evidence to rebut the inference that the required intent
existed.@  Ludwig v. State, 969 S.W.2d 22, 30
(Tex. App.CFort Worth 1998, pet. ref=d); Johnson
v. State, 932 S.W.2d 296, 302 (Tex. App.CAustin
1996, pet. ref=d).  Extraneous evidence offered to prove intent
is not relevant if the State's direct evidence clearly establishes the intent
element and that evidence is not contradicted by appellant nor undermined by
appellant=s cross‑examination of the
State=s
witnesses.  Rankin v. State, 974
S.W.2d 707, 719 (Tex. Crim. App. 1998); Hernandez v. State, 203 S.W.3d
477, 479 (Tex. App.CWaco 2006, pet. ref=d); see
also Thrift v. State, 134 S.W.3d 475, 478 (Tex. App.CWaco
2004), aff=d, 176
S.W.3d 221 (Tex. Crim. App. 2005). 
Additionally, after the defendant claims lack of intent, it can no
longer be inferred from other uncontested direct evidence, and the State may
prove intent through extraneous acts under rule 404(b).  Ludwig, 996 S.W.2d at 30; Johnson,
932 S.W.2d at 302.








Here,
appellant did not claim a lack of intent, nor did he inject it into the
proceedings in any way, including during voir dire questioning.  He did not testify or put on any evidence,
and his counsel did not make an opening statement to the jury.  Counsel=s
cross-examinations of witnesses were limited to confirming details of testimony
and, for example, as to the physical confrontation, eliciting testimony that
appellant=s son had also skipped school
the day he was kicked out of the house. 
The only evidence of intent in this case was elicited by the State on
direct in the form of the complainant=s
description of appellant=s acts,[3]
her opinion that they were intended to gratify his sexual desire, and her
testimony that appellant had asked her to Aflash@ him her
breasts and to pull down her pants so that he could see her Ap - - - -,A but
that he did so jokingly, so that she would think he was being playful.[4]  Accordingly, the 404(b) evidence was not
admissible as a result of any claim by the defense of a lack of intent.








Moreover,
here, appellant=s intent was inferable from the
acts themselves and the circumstances surrounding them.  See Murray v. State, 24 S.W.3d 881,
886B87 (Tex.
App.CWaco
2000, pet. ref=d) (holding that appellant=s using
crude term Ap - - - -A showed
intent for encounter to be sexual in nature); Castillo v. State, 910
S.W.2d 124, 128 (Tex. App.CEl Paso
1995, pet. ref=d, untimely filed) (holding that
intent was inferable from appellant=s
touching complainant=s genital area Amany,
many times@ both outside and under her
clothes and acting strangely and guilty after complainant told her mother); Garcia
v. State, 827 S.W.2d 27, 30B31 (Tex.
App.CCorpus
Christi 1992, no pet.) (holding that appellant=s
rubbing breasts of child from behind like a massage was sufficient to show
intent to gratify); cf. Powell v. State, 137 S.W.3d 84, 87B88, 90
n.3 (Tex. App.CTyler 2000) (holding that intent
for indecency purposes could be inferred from complainant=s
repeatedly waking up to appellant=s
touching her vaginal area while she was sleeping in room with other sleeping
children), rev=d on other grounds, 63
S.W.3d 435 (Tex. Crim. App. 2005). 
Accordingly, we conclude and hold that the trial court abused its
discretion by admitting the story for purposes of showing appellant=s intent
to gratify his sexual desire.  We must
therefore determine if the admission of the evidence was harmful.[5]  Tex. R. App. P. 44.2.








Error in
the admission of evidence under rule 404(b) is nonconstitutional error governed
by rule 44.2(b).  See Solomon v. State,
49 S.W.3d 356, 365 (Tex. Crim. App. 2001); Martin v. State, 176 S.W.3d
887, 897 (Tex. App.CFort Worth 2005, no pet.).  Thus, we must review the entire record to
determine if the error affected a substantial right of appellant=s; a
substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury=s
verdict.  Tex. R. App. P. 44.2(b); King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall
v. State, 961 S.W.2d 639, 643 (Tex. App.CFort
Worth 1998, pet. ref=d).








Here,
there is no denying that the story is prejudicial; it describes a fantasy about
heinous acts against a six-year-old girl in detail.  It was read to the jury.  The State discussed the story during its
closing argument, emphasizing that Ait
speaks volumes@ that the story was entitled AMy First
Child@ and the
complainant was appellant=s first child, that the girl in
the story was prepubescent as was the complainant, and that the names were the
same.  But this argument was also within
the context of urging the jury to consider the story as evidence of appellant=s intent
to gratify his sexual desires.  In her
closing argument, defense counsel pointed out the vileness of the story and
specifically reminded the jury that it could not convict based on the horrible
nature of it and that it had to Alook at
the evidence of what [the complainant] told you, the witness and the facts of
this case, to discern whether you believe those allegations beyond any
reasonable doubt.@ 
The remainder of her closing argument focused on the complainant=s
credibility, emphasizing the generalness of her testimony, the time between the
abuse and the complainant=s outcry, and the fact that she
never tried to get away from appellant.[6]  In rebuttal, the State argued in favor of the
complainant=s credibility, then ended by
discussing the evidence showing that the story had to have been appellant=s and
asked, 

[W]hat
would any person have reason to have this kind of horrible, sick, twisted
document, other than they wanted it.  I
mean, there=s nobody who would want this,
other than somebody who abuses children or thinks about it.  And it just so happens to be that the names
on this are [appellant] and [the complainant]. 
Isn=t that a little bit too much
coincidence now?








As
appellant points out, there is no evidence that he authored the story or that
it is even about the complainant.  But
although the story describes some of the acts testified to by the complainant,
it describes additional acts and involves strangers.  The defense was able to cross-examine one of
the detectives about the circumstances surrounding the disk and that it was not
in a secure area.  Defense counsel was also
able to elicit testimony that the story was not located in any of the folders
labeled James or Jim and that the detective did not know when the story was put
on the disk.[7]  Thus, it is evident that the jury had before
it the means to discern the difference between the complainant=s
testimony and the story here; even if it had believed appellant possessed the
story as a fantasy, it is clearly not a description of what occurred between
appellant and the complainant, at least how the complainant described their
relationship.

The
complainant=s testimony in this case was
clear and unequivocal.  Although the
defense described her testimony as lacking in detail, she described specific
instances of misconduct by appellantCthe Aflashing,@ being Asneaky@ by
touching her while they were wrestling, trying to penetrate her one nightCas well
as a continuous pattern of touching her with his hands and mouth, and making
her touch him, at night in bed.  Her
stepsister and brother corroborated her testimony that appellant routinely
slept in the same bed with his daughter when she was between eleven and
fourteen while her brother slept on the floor or in another room.  And the State also presented other evidence
that appellant did not have an appropriate relationship with his adolescent
daughter.








Considering
the entire record in this case and the nature and strength of the evidence
supporting the verdict, we cannot say that the error, although undoubtedly
troubling, had a substantial and injurious effect or influence in determining
the jury=s
verdict.  See Tex. R. App. P.
44.2(b); King, 953 S.W.2d at 271. 
Accordingly, we overrule appellant=s first
point.

Conclusion

Having
overruled appellant=s three points, we affirm the
trial court=s judgment.

 

PER
CURIAM

PANEL:  LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R.
App. P. 47.2(b)

DELIVERED:  December 18, 2008











[1]See Tex. R. App. 47.4.





[2]It also adduced other
evidence from the complainant and her brother that appellant favored the
complainant.  Because the complainant did
not come forward with her allegations against appellant until she was almost
twenty years old, the State contended that this evidence of favoritism helped
show why she took so long to tell anyone what appellant had done.





[3]In addition to the acts
that occurred while appellant and the complainant were in bed, appellant also
would reach up the complainant=s shirt or down her pants whenever they were
wrestling or playing during the day.  The
complainant testified that appellant tried to be sneaky about it, but he knew
it made her uncomfortable.





[4]Specifically, the
complainant testified, A[W]henever he did things,
he did it in a playful manner, so I would be more comfortable and more
receptive to it.@  She also stated that when he went too far, Ahe would . . . turn [it]
into . . . like a wrestling thing, like we were playing.@  If she told him to stop, he would get angry
and not speak to her for a couple of days to up to a week.





[5]The State also contends
that the evidence is nevertheless admissible to show motive.  However, if the acts and surrounding
circumstances themselves show an intent to gratify appellant=s sexual desire, they
must also in and of themselves show motive, i.e., the intent to gratify
appellant=s sexual desire by
fondling the complainant.  Thus, as with
intent, the State had no need for the evidence.





[6]The complainant told her
grandfather about the abuse in 2006 when she was about twenty years old.   





[7]He did testify that there
was a date, January 25, 2001, associated with the disk, but he did not know
what that date meant.