

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-293-CR

JAMES ASHLEY MAYER                                                APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

James Ashley Mayer appeals from the jury verdict convicting him of two counts of aggravated sexual assault of a child and two counts of indecency with a child. The trial judge assessed his punishment at confinement for life on each aggravated sexual assault count and twenty years' confinement for each count of indecency with a child. In three points, appellant contends that the trial court reversibly erred by admitting the following into evidence at guilt-

---

[1] *See* Tex. R. App. 47.4.

innocence: that appellant had given alcoholic beverages to the complainant and her also underage friend, that appellant pushed his son into a wall during a physical altercation between appellant and the complainant, and a detailed story about the sexual assault of a child that police found on a computer disk in appellant's home. We affirm.

**Background**

The complainant, appellant's daughter, testified that appellant regularly touched her breasts and genitals, placed his tongue and mouth on her breasts and genitals, and penetrated her with his finger during an approximately three-year period when she was between eleven and fourteen years old. He also attempted to have vaginal intercourse with her, but according to complainant, he could not complete the act, and all that happened was "genital-to-genital" contact. During this time, appellant slept in the same bed as the complainant; he did these things when he thought she was asleep or when they were lying down in bed. Appellant's brother and stepsister corroborated the complainant's testimony that appellant and the complainant slept in the same bed; for a time, appellant's stepsister slept in the bed as well and her brother slept in the same room on the floor. However, both testified that they were heavy sleepers and do not recall anything happening between appellant and the complainant.

To highlight the inappropriate nature of the relationship between appellant

2

and the complainant, the State offered evidence under article 38.37 of the code of criminal procedure, which the trial court admitted over appellant's objections. Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon Supp. 2008). First, the complainant and her brother both testified about an argument between appellant and the complainant. During the argument, appellant slapped the complainant; when her brother tried to intervene, appellant pushed him into the wall. The complainant then pushed appellant down the nearby stairs. The next day, complainant's brother skipped school, and appellant kicked him out of the house.

Next, the complainant, her brother, and her former best friend testified that when the complainant was in the seventh grade, appellant gave her and her friends alcoholic beverages and that the complainant became intoxicated. Specifically, both the complainant and her former best friend, whom she had not seen since they were in the eighth grade, testified that appellant, a former bartender, made them "Buttery Nipple" shots and gave them wine coolers.

Finally, the trial court admitted evidence found by police when they searched appellant's home: a story on a computer disk entitled "My First Child," which is a detailed, graphic account of the sexual assault of a child with the same first name as complainant by a perpetrator having the same first name as appellant. Although many of the details in the story are different from what

3

the complainant testified to, some of the acts are similar.

Appellant's three points on appeal complain about the trial court's admission of these extraneous acts.

## Standard of Review

We review a trial court's decision to admit or to exclude evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Davis v. State*, No. 02-07-00177-CV, 2008 WL 3918050, at *4 (Tex. App.—Fort Worth Aug. 26, 2008, pet. filed). A trial court does not abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g); *Davis*, 2008 WL 3918050, at *4. And it cannot be said that the trial court's decision falls outside that zone if it can be supported under any theory of law, regardless of whether the theory was raised at trial. *Davis*, 2008 WL 3918050, at *4; *Lincicome v. State*, 3 S.W.3d 644, 649 (Tex. App.—Amarillo 1999, no pet.).

## Evidence Admitted Under Article 38.37

The State argued that the shoving incident and appellant's giving alcohol to the complainant and her friend were admissible under code of criminal procedure article 38.37 as evidence of the relationship between the appellant and complainant. Under article 38.37, in a case involving sexual offenses against a child, evidence of extraneous offenses "committed by the defendant against the child" are admissible notwithstanding rules 404 and 405 "for its bearing on relevant matters," including the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child. Tex. Code Crim. Proc. Ann. art. 38.37, §§ 1–2; *see* Tex. R. Evid. 404, 405. Appellant argues that evidence about him giving alcohol to the complainant's friend and evidence that he pushed her brother is not evidence of extraneous offenses committed against *the complainant* and, thus, none of the evidence is admissible under article 38.37. The State contends, however, that this evidence is same transaction contextual evidence.

### Evidence About Alcoholic Beverages

The State introduced the evidence about appellant giving the girls alcoholic beverages to show that appellant favored the complainant.[2] Other

---

[2] It also adduced other evidence from the complainant and her brother that appellant favored the complainant. Because the complainant did not come

5

testimony in this same vein was that after the complainant moved out of the house, appellant bought her a car and paid her bills; he did not do the same for her brother. According to the State, appellant's giving alcohol to the complainant's friends was an act directed at the complainant, not just her friends, and further exemplified the inappropriate relationship between appellant and the complainant.

Appellant objected to the admission of this testimony for two reasons: (1) appellant's giving the girls alcoholic beverages was not temporally related to the sexual conduct, nor was it a part of the sexual offenses; and (2) it was overly prejudicial because it tended to show only character conformity. When the State repeatedly urged the admission of the evidence under article 38.37, appellant did not object that the extraneous matter was inadmissible because the acts were directed at someone other than the complainant. However, appellant's complaint on appeal is that evidence of bad acts against a third party is not admissible to show relationship under article 38.37. Accordingly, appellant's complaint on appeal does not comport with his complaint at trial and, thus, is not preserved for our review. *See Heidelberg v. State*, 144

---

forward with her allegations against appellant until she was almost twenty years old, the State contended that this evidence of favoritism helped show why she took so long to tell anyone what appellant had done.

6

S.W.3d 535, 538 (Tex. Crim. App. 2004); *Bell v. State*, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 827 (1997). Moreover, the trial court did not abuse its discretion by admitting the evidence as to the complainant under article 38.37 because it serves to show, among other things, appellant's inappropriate treatment of the complainant as adult-like. *See* Tex. Code Crim. Proc. Ann. art. 38.37; *cf*. *Jones v. State*, 119 S.W.3d 412, 418, 420 (Tex. App.—Fort Worth 2003, no pet.) (holding that appellant's act of providing alcohol to groups of girls before trying to take off their swimsuit tops and bottoms was relevant to show how appellant's inappropriate relationship with complainant developed through group activities directed at girls simultaneously). We overrule appellant's second point.

**Evidence About Shoving Incident**

Appellant also contends that the evidence about his shoving his son, the complainant's brother, during an argument with the complainant is not admissible under article 38.37 because his physical act towards his son was not directed at the complainant. At trial, he objected that the physical assault had "to do with [the complainant's brother], not" the complainant. The trial court determined that the conduct was admissible because it occurred "in front of [the complainant] and it was violence against [her] and it explains why [she] was in the relationship she was with the [appellant] and alone in the house."

7

Here, we cannot conclude that the trial court abused its discretion in admitting this evidence under article 38.37.  Although the physical act of appellant's shoving his son was not a discrete act of physical violence against the complainant, it occurred within the context of acts of violence by appellant against her and is further evidence of appellant's attempts to keep his son out of the relationship between him and his daughter.  *See Jones*, 119 S.W.3d at 420 (holding that it was difficult to separate acts against third parties from acts against complainant because acts were directed at group).  Appellant contends that the evidence does not tend to show that he kicked his then eleven or twelve year old son out of the house because he tried to interfere in the fight because there is also evidence that his son skipped school the day after (also the day he was thrown out) and had behavior problems.  However, appellant was able to cross-examine both the complainant and her brother about these alternative reasons that appellant may have had for kicking him out.

Moreover, even if the trial court admitted this evidence in error, we discern no harm.  The State did not dwell on or emphasize this evidence; it was a small part of the trial.  And appellant's shoving his son is not as egregious as the acts alleged against his daughter and is just as disturbing as the admissible testimony about appellant's slapping his daughter in the same episode.  *See Motilla v. State*, 78 S.W.3d 352, 359 (Tex. Crim. App. 2002).  Accordingly,

8

we also overrule appellant's third point.

## Evidence Admitted Under Rule 404(b)

Appellant also complains about the admission of a typewritten graphic, detailed story depicting the sexual assault of a six-year-old girl with the same name as the complainant by a perpetrator with the same name as appellant. Police found the disk in appellant's home on a computer table, along with other personal items such as a cap and hunting knife, in a room that appeared to be appellant's office. Included on the disk were file folders with the names, "James A. Mayer," "Jim's," and "Jim's documents."

The State offered the evidence to show appellant's "intent to arouse or gratify [his] sexual desire," a required element of the indecency counts under the statute and as alleged in the indictment. *See* Tex. Penal Code Ann. § 21.11(a)(1), (c) (Vernon 2003). Appellant objected that the evidence was being offered solely to prove character conformity and that it was not admissible because appellant had not attempted to rebut any evidence of intent other than by placing the offense at issue by pleading not guilty. The trial court admitted the evidence because "of the similarities between the story and the offense now on trial and the fact that the [appellant] possessed it[, which] goes to show his intent."

The State first contends that appellant failed to preserve error on this

9

point because he did not object on the basis that intent can be inferred from the acts themselves and thus that the State had no need for intent evidence. However, appellant did object to the evidence under 404(b) on the ground that there must be some rebuttal from the defense first as to intent before the State can admit 404(b) evidence for the purpose of showing intent. When a party attempts to adduce evidence of extraneous acts, the opponent of that evidence must object in a timely fashion to preserve error on appeal. *Montgomery*, 810 S.W.2d at 387. Appellant did so here. After the opposing party so objects, "it is incumbent upon the proponent of the evidence to satisfy the trial court that the 'other crime, wrong, or act' has relevance apart from its tendency 'to prove character of a person in order to show that he acted in conformity therewith.'" *Id*. (quoting Tex. R. Evid. 404(b)). Thus, once appellant objected to the evidence, it was the State's burden, not appellant's, to show that it was admissible for intent purposes. We find no authority requiring appellant to object again *after* the trial court's ruling that such evidence is admissible. Accordingly, we hold that appellant properly preserved this complaint for our review.

"Intent can be characterized as a contested issue for purposes of justifying the admission of extraneous offense evidence to help prove intent if the required intent for the primary offense cannot be inferred from the act itself

10

or if the accused presents evidence to rebut the inference that the required intent existed." *Ludwig v. State*, 969 S.W.2d 22, 30 (Tex. App.—Fort Worth 1998, pet. ref'd); *Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd). Extraneous evidence offered to prove intent is not relevant if the State's direct evidence clearly establishes the intent element and that evidence is not contradicted by appellant nor undermined by appellant's cross-examination of the State's witnesses. *Rankin v. State*, 974 S.W.2d 707, 719 (Tex. Crim. App. 1998); *Hernandez v. State*, 203 S.W.3d 477, 479 (Tex. App.—Waco 2006, pet. ref'd); *see also Thrift v. State*, 134 S.W.3d 475, 478 (Tex. App.—Waco 2004), *aff'd*, 176 S.W.3d 221 (Tex. Crim. App. 2005). Additionally, after the defendant claims lack of intent, it can no longer be inferred from other uncontested direct evidence, and the State may prove intent through extraneous acts under rule 404(b). *Ludwig*, 996 S.W.2d at 30; *Johnson*, 932 S.W.2d at 302.

Here, appellant did not claim a lack of intent, nor did he inject it into the proceedings in any way, including during voir dire questioning. He did not testify or put on any evidence, and his counsel did not make an opening statement to the jury. Counsel's cross-examinations of witnesses were limited to confirming details of testimony and, for example, as to the physical confrontation, eliciting testimony that appellant's son had also skipped school

11

the day he was kicked out of the house. The only evidence of intent in this case was elicited by the State on direct in the form of the complainant's description of appellant's acts,[3] her opinion that they were intended to gratify his sexual desire, and her testimony that appellant had asked her to "flash" him her breasts and to pull down her pants so that he could see her "p - - - -," but that he did so jokingly, so that she would think he was being playful.[4] Accordingly, the 404(b) evidence was not admissible as a result of any claim by the defense of a lack of intent.

Moreover, here, appellant's intent was inferable from the acts themselves and the circumstances surrounding them. *See Murray v. State*, 24 S.W.3d 881, 886–87 (Tex. App.—Waco 2000, pet. ref'd) (holding that appellant's using crude term "p - - - -" showed intent for encounter to be sexual in nature); *Castillo v. State*, 910 S.W.2d 124, 128 (Tex. App.—El Paso 1995, pet. ref'd,

---

[3] In addition to the acts that occurred while appellant and the complainant were in bed, appellant also would reach up the complainant's shirt or down her pants whenever they were wrestling or playing during the day. The complainant testified that appellant tried to be sneaky about it, but he knew it made her uncomfortable.

[4] Specifically, the complainant testified, "[W]henever he did things, he did it in a playful manner, so I would be more comfortable and more receptive to it." She also stated that when he went too far, "he would . . . turn [it] into . . . like a wrestling thing, like we were playing." If she told him to stop, he would get angry and not speak to her for a couple of days to up to a week.

untimely filed) (holding that intent was inferable from appellant's touching complainant's genital area "many, many times" both outside and under her clothes and acting strangely and guilty after complainant told her mother); *Garcia v. State*, 827 S.W.2d 27, 30–31 (Tex. App.—Corpus Christi 1992, no pet.) (holding that appellant's rubbing breasts of child from behind like a massage was sufficient to show intent to gratify); *cf*. *Powell v. State*, 137 S.W.3d 84, 87–88, 90 n.3 (Tex. App.—Tyler 2000) (holding that intent for indecency purposes could be inferred from complainant's repeatedly waking up to appellant's touching her vaginal area while she was sleeping in room with other sleeping children), *rev'd on other grounds*, 63 S.W.3d 435 (Tex. Crim. App. 2005). Accordingly, we conclude and hold that the trial court abused its discretion by admitting the story for purposes of showing appellant's intent to gratify his sexual desire. We must therefore determine if the admission of the evidence was harmful.[5] Tex. R. App. P. 44.2.

Error in the admission of evidence under rule 404(b) is nonconstitutional error governed by rule 44.2(b). *See Solomon v. State*, 49 S.W.3d 356, 365

---

[5] The State also contends that the evidence is nevertheless admissible to show motive. However, if the acts and surrounding circumstances themselves show an intent to gratify appellant's sexual desire, they must also in and of themselves show motive, i.e., the intent to gratify appellant's sexual desire by fondling the complainant. Thus, as with intent, the State had no need for the evidence.

(Tex. Crim. App. 2001); *Martin v. State*, 176 S.W.3d 887, 897 (Tex. App.—Fort Worth 2005, no pet.). Thus, we must review the entire record to determine if the error affected a substantial right of appellant's; a substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall v. State,* 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd).

Here, there is no denying that the story is prejudicial; it describes a fantasy about heinous acts against a six-year-old girl in detail. It was read to the jury. The State discussed the story during its closing argument, emphasizing that "it speaks volumes" that the story was entitled "My First Child" and the complainant was appellant's first child, that the girl in the story was prepubescent as was the complainant, and that the names were the same. But this argument was also within the context of urging the jury to consider the story as evidence of appellant's intent to gratify his sexual desires. In her closing argument, defense counsel pointed out the vileness of the story and specifically reminded the jury that it could not convict based on the horrible nature of it and that it had to "look at the evidence of what [the complainant] told you, the witness and the facts of this case, to discern whether you believe

14

those allegations beyond any reasonable doubt." The remainder of her closing argument focused on the complainant's credibility, emphasizing the generalness of her testimony, the time between the abuse and the complainant's outcry, and the fact that she never tried to get away from appellant.[6] In rebuttal, the State argued in favor of the complainant's credibility, then ended by discussing the evidence showing that the story had to have been appellant's and asked,

> [W]hat would any person have reason to have this kind of horrible, sick, twisted document, other than they wanted it. I mean, there's nobody who would want this, other than somebody who abuses children or thinks about it. And it just so happens to be that the names on this are [appellant] and [the complainant]. Isn't that a little bit too much coincidence now?

As appellant points out, there is no evidence that he authored the story or that it is even about the complainant. But although the story describes some of the acts testified to by the complainant, it describes additional acts and involves strangers. The defense was able to cross-examine one of the detectives about the circumstances surrounding the disk and that it was not in a secure area. Defense counsel was also able to elicit testimony that the story was not located in any of the folders labeled James or Jim and that the

---

[6] The complainant told her grandfather about the abuse in 2006 when she was about twenty years old.

15

detective did not know when the story was put on the disk.[7] Thus, it is evident that the jury had before it the means to discern the difference between the complainant's testimony and the story here; even if it had believed appellant possessed the story as a fantasy, it is clearly not a description of what occurred between appellant and the complainant, at least how the complainant described their relationship.

The complainant's testimony in this case was clear and unequivocal. Although the defense described her testimony as lacking in detail, she described specific instances of misconduct by appellant—the "flashing," being "sneaky" by touching her while they were wrestling, trying to penetrate her one night—as well as a continuous pattern of touching her with his hands and mouth, and making her touch him, at night in bed. Her stepsister and brother corroborated her testimony that appellant routinely slept in the same bed with his daughter when she was between eleven and fourteen while her brother slept on the floor or in another room. And the State also presented other evidence that appellant did not have an appropriate relationship with his adolescent daughter.

Considering the entire record in this case and the nature and strength of the evidence supporting the verdict, we cannot say that the error, although

---

[7] He did testify that there was a date, January 25, 2001, associated with the disk, but he did not know what that date meant.

16

undoubtedly troubling, had a substantial and injurious effect or influence in determining the jury's verdict. *See* Tex. R. App. P. 44.2(b); *King*, 953 S.W.2d at 271. Accordingly, we overrule appellant's first point.

## Conclusion

Having overruled appellant's three points, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 18, 2008